JOHN S. CUNNINGHAM v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY COMPANY.

### No. 11099.

1. PRACTICE, JUSTICE OF PEACE— *Garnishment— Final Order—· Review.* Where a defendant, in an action brought against him before a justice of the peace, appears and files an affidavit under section 509, chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4589), claiming wages due him to be exempt which were garnished in the suit, and a hearing of the question of exemption is had by the justice, resulting adversely to the defendant, *held*, that the decision and order of the justice is a final order, whether made before or after judgment, and that proceedings in error will lie to the district court to review the same.

2: ———— *Action Against Garnishee—Res Judicata.* In such case, where no action is taken by the defendant to review the decision of the justice of the peace, the matter of the exemption of the wages garnished becomes *res judicata*, and the garnishee, when sued by the judgment creditor to recover the amount admitted in its answer to be owing the defendant, cannot relitigate the question whether the wages due were exempt or not.

Error from court of appeals, northern department ; John H. Mahan, Abijah Wells, and Sam'l W. McElroy, judges.   Opinion filed March 11, 1899.   Reversed.

*George W. Littick,* and *T. P. Anderson,* for plaintiff in error.

*Wallace Pratt, I. P. Dana,* and *N. F. Heitman,* for defendant in error.

The opinion of the court was delivered by

Smith, J. : John S. Cunningham, the plaintiff in error, sued one Arthur E. Keeley before a justice of the peace in Wyandotte county, and garnished the railway company, defendant in error, in whose employ Keeley was working.   The railway company is a Missouri corporation, but its road runs into and through a part of Wyandotte county.   Its principal office is in Kansas City, Mo., where Keeley lived, his wages being payable there.   Keeley was the head of a family which resided with him, and under the laws of Missouri the wages due him from the railway company at the time of garnishment were exempt from attachment or execution.   These facts were set up in the answer of the garnishee.   Keeley appeared in the justice court with his attorney and filed an affidavit claiming the wages garnished to be exempt under section 1, chapter 268, Laws of 1889 (Gen. Stat. 1897, ch. 95, § 509).   This section reads :

" That the earnings of a debtor, who is a resident

of this state, for his personal services at any time within three months next preceding the issuing of an execution, attachment or garnishment process, cannot be applied to the payment of his debts when it is made to appear by the debtor's affidavit or otherwise that such earnings are necessary for the maintenance of a family supported wholly or partly by his labor : *Provided*, that at the time of filing such affidavit the debtor shall notify the plaintiff or his agent or attorneys thereof in writing : *And provided*, that nothing herein contained shall prevent the adverse party from controverting the matters sought to be proven by such affidavit by counter-affidavit, or if sought to be proven in any other manner the same may be controverted by any competent evidence : *And provided further*, That such counter-affidavit shall be filed within twenty-four hours after the notice of the filing of the said debtor's affidavit, and final hearing shall be had thereon at a time to be fixed by the court within ten days from the notice of the filing of the debtor's affidavit if pending in the justice's court, and if pending in the district court it shall be tried at the first term held after filing such affidavit.'' (Gen. Stat. 1889, ¶ 4589.)

A hearing was had, both parties, plaintiff and defendant, appearing by their attorneys. The motion and application of the defendant Keeley was overruled. Thereafter judgment was rendered in favor of Cunningham against him for $41.03 debt and $18.50 costs. The justice made an order on the railway company, ordering it to pay into his court $59.53, the amount of the judgment and costs.

About the same time one Louis Katz brought suit before the same justice against Arthur E. Keeley upon an account, and caused garnishment summons to issue to said railway company. The defendant Keeley filed an affidavit of exemption in that case, and the plaintiff filed a counter-affidavit under the

provisions of the statute above set out. Both parties appeared at the hearing of the motion by their attorneys. After a hearing the same was overruled and Keeley's claim of exemption denied. The proceedings in the Katz case differ from those in the Cunningham case only in the fact that in the former the motion to discharge the garnishee and the claim of exemption were made after judgment. Judgment in the Katz case was rendered for $27.35 debt, and costs, and the garnishee ordered to pay money owing by it to the defendant Keeley into court to be applied in payment of the judgment. In neither case was there any appeal from the judgment or proceedings in error taken from the ruling and order of the justice refusing to release the money garnisheed.

Thereafter, by written assignment, Louis Katz transferred his judgment to the plaintiff in error, John S. Cunningham, who, joining this with the judgment obtained by him, brought an action against the railway company in the court of common pleas of Wyandotte county for the amount of the two judgments, the company having refused to obey the order of the justice directing it to pay into court the amount stated in its answers as owing to Keeley, which was enough to pay both judgments. The railway company answered in the common pleas court, averring that the money due from it to Keeley was for wages exempt under the laws of Missouri. The court of common pleas held the railway company liable, and rendered judgment against it. This judgment was reversed by the court of appeals. (*Railway Co. v. Cunningham,* 7 Kan. App. 47, 51 Pac. 972.)

We shall consider but one question raised in the briefs of counsel. If the hearing on the motions and applications of the defendant Keeley to discharge the

garnishee and release the money in its hands as exempt was subject to be reviewed on error or appeal, or was a final order, then no proceedings of such a nature having been instituted, the matter was *res judicata,* and could not be relitigated in the suit brought in the common pleas court against the garnishee to recover the amount of the judgments, which amount the railway company answered in the justice's court that it owed the defendant. It will be seen that section 509, chapter 95, General Statutes of 1897, above set out in the statement of this case, makes provision for a trial of the question of exemption by affidavits, counter-affidavits, or any other competent evidence, and that *final hearing* shall be had thereon. This statute, passed in 1889, wrought a radical change in the procedure prevailing at that time in such cases. Theretofore, by a law passed in 1886 (ch. 111, Laws 1886), the proof contained in the affidavit of the debtor that his earnings were necessary for the maintenance of a family supported wholly or partly by his labor was conclusive on the question of his right to the exemption, and no further inquiry or trial could be had; and it was made the duty of the court, immediately on the filing of such affidavit, to release all moneys held by garnishee process.

The defendant in error contends that the ruling or finding of the justice of the peace, holding the money in the garnishee's hands not exempt to the debtor, was neither final nor appealable. The court of appeals adopted this view, holding that the proceeding was a summary one, to be had upon motion and affidavit; that there was no way either party could have a jury trial on the questions involved, and hence they were deprived of valuable rights. We cannot concur in this conclusion. In the case of *Comm'rs of Wilson Co. v. Mc-*

*Intosh*, 30 Kan. 234, 1 Pac. 572, Justice Brewer, in discussing the question, says :

" The only reason given is, as heretofore stated, that the one litigation was carried on by motion and the other by action.  But why should not a decision upon a motion be as conclusive as that upon a trial?  The reasons given are that motions are often made in the hurry of a trial, and decided with comparatively little examination and consideration ; that the decision cannot be taken up for review ; and that they are tried upon affidavits rather than oral testimony. None of these reasons exist in the case at bar.  The motion was not made until after judgment.  It could not have been regarded as in any sense interlocutory, or one whose subject-matter could thereafter be more carefully examined, but must have been considered as a final determination as to the rights of the sheriff.  It could have been taken up for review to this court, and indeed time was given to make a case. . . . We think there is a growing disposition to enlarge the scope of the doctrine of *res adjudicata*, and to place more regard on the substance of the decision than on the form of the proceedings.  One thing which indicates this is the increased facility of review in the appellate courts.  It used to be the practice that no ruling of the trial court went up for review until after final judgment ; any preliminary rulings, if erroneous, might up to that time be corrected by the trial court.  Then it was assumed that a final examination in that tribunal had been had, and the whole record was ready to be transferred to the appellate court ; and hence it was argued that no prior decision should be considered as final or *res adjudicata*. But our present practice provides for taking immediately to the appellate court a vast number of rulings prior to the final judgment.  Now that the decision of a motion can be preserved in a separate record and taken up by itself, presupposes a full and careful consideration in both the trial and appellate courts ; and when that is had it would seem that the question thus

separately and carefully considered should be finally disposed of, and not be thrown back for further litigation at the mere caprice of either party.''

In the above case it was contended by counsel that the rule of *res judicata* could not obtain as to motions like the one involved there, for the reason, first, that the merits of the question were not wholly capable of being tried, but were in fact tried on the motion, and second, that it was a question upon which the parties were not entitled to a jury, but upon which the decision is by statute expressly given to the court. Section 582, chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4639), reads : ''A judgment rendered or final order made by a justice of the peace or any other tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court.'' It follows from this statute and the decisions that the order and ruling of the justice of the peace in the Katz case refusing to release the money of the defendant in the suit, having been heard and decided after judgment against the debtor, was the proper subject of review by proceedings in error in the district court, and hence was conclusive of the rights of the parties unless set aside or reversed by direct proceedings. (*Carlyle v. Smith,* 36 Kan. 614, 14 Pac. 156 ; *Axman v. Dueker,* 45 id. 179, 25 Pac. 582.)

The case of *Watson v. Jackson,* 24 Kan. 442, is relied on by defendant in error as decisive of the question involved in the case at bar. It was held there that the decision of a motion made before a justice of the peace to discharge from seizure certain property taken on attachment on the ground that it was exempt is not conclusive, and the question of exemption may be tried thereafter in an action of replevin brought by

the judgment debtor. In the opinion Justice Brewer said :

"It will be noticed that the statute provides expressly for a ruling and decision upon questions affecting the truth of the affidavit and consequent sufficiency of the attachment proceedings, and for a review in this court by proceedings in error of the decision of the district court on a motion to dissolve an attachment. (Code, §§ 228, 542; Justices' Act, § 53.) But the question of exemption turns not at all upon the sufficiency of the attachment proceedings, and is nowhere in terms committed to the decision of the court."

The last expression is significant. The act of 1889 does in terms commit the question of exemption of earnings to the decision of the justice, but goes further, and provides for a final hearing at a time to be fixed by the court.

In *Healey v. Deepwater Clay Co.*, 48 Kan. 618, 29 Pac. 1089, a judgment creditor of a corporation, after execution returned unsatisfied, on motion obtained an execution against Healey by order of the justice of the peace before whom the judgment was rendered. He appealed. In passing on the question of his right to appeal, the court said, after quoting the section of the statute providing for appeals from justices of the peace :

"This statute provides only for an appeal from a final judgment, and there is no statute anywhere to be found providing for an appeal from a final order, or from any order. . . . Now, Healey might have taken the ruling of the justice of the peace in the present case to the district court for review upon a petition in error, but he could not take the ruling or the case to the district court upon an appeal, for no statute can be found authorizing the same."

It follows, from the position this court has taken upon the question, that Keeley had the right to a re-

view by proceedings in error to the district court, of the action of the justice in refusing to release his wages as exempt in the Katz case, the motion having been heard and overruled after judgment against him on the claim sued on.

We are of the opinion also that the statute under which the proceedings before the justice were had contemplates that the hearing shall be final, whether had before or after judgment, and that the debtor in either case, if he feels aggrieved at the decision, may invoke the action of the district court by petition in error. We think a party claiming the exemption, and whose claim has been denied, need not wait for the rendition of judgment before instituting proceedings in error. Thus a complete remedy is secured. The statute provides for a final and speedy hearing of the question of exemption both in the justice's and district court; a hearing upon affidavits or any competent evidence. After this trial is had and a decision rendered the rights of the parties are concluded, as in any other judgment, and the matters litigated are *res judicata*. The debtor in the case at bar had his day in court. He litigated with the opposite party his right of exemption under a statute authorizing the inquiry. He acquiesced in the final order of the justice by taking no steps to have it reviewed. His rights being thus concluded by the judgment of the justice on the question of exemption, the garnishee, being a mere stakeholder, could not again interpose defenses to the suit against it which were considered and determined in the former contest between the debtor and creditor. (*Wilson v. Burney*, 8 Neb. 39.)

The judgment of the court of appeals will be reversed, and the judgment of the court of common pleas affirmed.