JOHN C. MADDEN, *Appellee*, v. THE UNION PACIFIC
RAILROAD COMPANY, *Appellant.*

No. 18,039.

### SYLLABUS BY THE COURT.

GARNISHMENT—*Process Abused—Remedy by Execution.* Under
the circumstances stated in the opinion it is held that a judg-
ment creditor should have seized property of his debtor, which
had been delivered to a railway company for transportation
but which still remained at the carrier's warehouse, by execu-
tion, although one execution had been issued and returned
unsatisfied; and that it was an abuse of the remedy given by
section 6524 of the General Statutes of 1909 (garnishment
after the return of execution unsatisfied) for the creditor to
attempt to impound the property in the possession of the
carrier by garnishment proceedings.

Appeal from Shawnee district court, division No. 1.
Opinion filed April 12, 1913. Reversed.

*R. W. Blair, B. W. Scandrett,* and *C. A. Magaw,* all
of Topeka, for the appellant.

*J. M. Stark,* of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Madden obtained a money judgment in
the court of Topeka against Fred C. McMann, upon
which an execution was issued and returned unsatis-
fied. Subsequently the railroad company was gar-
nished as having personal property of McMann's in
its possession. The proceeding resulted in an order
upon the garnishee to deliver to the marshal of the
court a piano and certain other articles of household
furniture. The order not having been complied with
Madden instituted suit against the railroad company
in the city court for the amount of his judgment, and
for damages and costs. Judgment was rendered by
the city court in favor of the defendant. The plaintiff
appealed to the district court, which rendered judg-

ment in his favor.   The defendant now appeals to this court.

The property in controversy was delivered to the defendant by the Topeka Transfer and Storage Company for shipment to Portland, Ore.  It was consigned to J. B. Lilly, and a bill of lading was issued accordingly and delivered to the consignor.  While the goods were on the defendant's warehouse platform and were being loaded into a car the garnishment summons was served.  A few hours later the goods were dispatched to their destination.  The garnishment summons, or order, as the statute terms it, read as follows:

"*The State of Kansas to The Union Pacific Railroad Co.*:

"Whereas, on the 5th day of August, 1910, John C. Madden recovered judgment against Fred C. McMann in the court of Topeka, city of Topeka, in said county, for the sum of one hundred twenty-seven and $^{35}/_{100}$ dollars; and whereas, execution has been duly issued upon said judgment and has been duly returned wholly unsatisfied for want of property whereon to levy the same; and whereas, said plaintiff has duly filed his affidavit stating that he has good reason to believe and does believe that you, the Union Pacific Railroad, within the said county of Shawnee, have property of the said defendant Fred C. McMann and are indebted to the said defendant Fred C. McMann:

"You are hereby commanded to appear before the court of Topeka, in said city, on the 21st day of October, 1910, at 8 o'clock A. M., to answer such questions as may be propounded to you by the said judgment creditor, touching the property of said judgment debtor in your possession or under your control, and the amount owing by you to said judgment debtor, whether due or not."

On the back of the summons the following words appeared, written in pencil: "Household goods billed to J. B. Lilly, Portland, Ore."  The memorandum was called to the attention of the defendant's agent by the marshal of the court when the summons was served.

At the trial it was shown that McMann had listed the property for taxation, had mortgaged it, and that it

had been stored in his name by the storage and transfer company. While McMann claimed that the piano belonged to his daughter and the other articles to his wife, the evidence was sufficient to warrant the jury in finding title in him. The memorandum indorsed on the summons was written by the clerk of the court who issued it. No evidence was offered that the defendant had any knowledge whatever of who in fact owned the goods or any notice that McMann owned them. The goods were moved by the transfer company and delivered to the defendant, the affidavit in garnishment was filed, and the summons was issued and served, all on October 11, 1910, and all by 2 o'clock of the afternoon of that day. The defendant moved for a peremptory instruction to the jury to find in its favor.

The proceedings having originated in the court of Topeka they are governed by the code of civil procedure before justices of the peace. The order of delivery made by the city court was not a final determination of the liability of the garnishee. When sued for the value of the property the garnishee had the right to show any state of facts which would defeat the plaintiff. (*Board of Education v. Scoville,* 13 Kan. 17; *Mull v. Jones,* 33 Kan. 112, 5 Pac. 388; *Linder v. Murdy,* 37 Kan. 152, 14 Pac. 447.)

The case of *Cunningham v. Railway Co.,* 60 Kan. 268, 56 Pac. 502, cited by the plaintiff, is not pertinent. In that case the defendant in the principal action contested the garnishment order on the ground that the money sought to be reached was exempt. He was defeated and did not appeal. Afterwards when the garnishee was sued for noncompliance with the order, it attempted again to invoke the defendant's right of exemption. Under these circumstances the court properly held the matter to be *res judicata.*

There is no doubt that the defendant was not relieved from garnishment merely because it is a common carrier and held the property for purposes of transportation only.

Madden v. Railroad Co.

"According to the better doctrine property in the hands of a common carrier in actual transit can not be reached by garnishment proceedings by summoning the common carrier as garnishee. Where, however, property has been delivered to a common carrier for shipment, but it is not in actual transit at the time of the service of the garnishment process upon the carrier, according to the weight of authority, such prop-erty is liable and the carrier may be held as garnishee or trustee." (20 Cyc. 1021.)

A list of cases dealing with the subject may be found in Ann. Cas. 1913A at page 1321.

In this case, however, the remedy was abused. The plaintiff should have sent the marshal of the court to the defendant's warehouse with an execution instead of a garnishment summons.

While garnishment proceedings are purely legal in the sense that they are out of the course of the common law and must be authorized by statute, in this state the remedy both in the district and other courts is in many respects essentially equitable.

"The general theory and doctrine of garnishment is, that the garnishee is to be protected against all unnec-essary vexation, and that the garnishee proceedings amount to no more than a substitution of the plaintiff for the defendant debtor in the enforcement of any lia-bility against the garnishee." (*Phelps v. A. T. & S. F. Rld. Co.*, 28 Kan. 165, 169.)

"Moreover, proceedings in garnishment are not in the ordinary course of the common law. They involve consequences that would not otherwise occur in law or equity, and often compel the garnishee to submit to the expense of a suit in which he has no interest, and which he might be saved but for the garnishment. The pro-ceeding should be governed by equitable principles, to the end that no unwarranted vexation or expense be inflicted upon the garnishee." (*Brooks v. Fields et al.*, 25 Okla. 427, 432, 106 Pac. 828.)

"Statutes of garnishment at best give a 'harsh and peculiar remedy,' and ought not to be resorted to when the redress sought may be obtained through common-

law proceedings." (*Iron Cliffs Co. v. Lahais,* 52 Mich. 394, 396, 18 N. W. 121.)

The statute under which the plaintiff proceeded is framed according to these principles.

"When an execution issued by a justice of the peace shall have been returned unsatisfied, the judgment creditor, his agent or attorney, may file an affidavit with the justice, setting forth that he has good reason to and does believe that any person or corporation (to be named), and within the county, has property of the defendant, or is indebted to him, and thereupon the justice shall issue an order to such garnishee to appear before him on a day to be named and answer such questions as may be propounded to him by the judgment creditor touching the property of the judgment debtor in his possession or under his control, and the amount owing by him to the judgment debtor, whether due or not." (Gen. Stat. 1909, § 6524, Jus. Civ. Code, § 155.)

When the plaintiff has obtained a judgment upon which an ordinary execution may issue, that remedy must be exhausted before garnishment may be resorted to. This means exhausted in fact and in good faith and not merely as a matter of form.

"An affidavit in garnishment is insufficient to support a garnishment proceeding where predicated upon a return of execution made by order of the plaintiff's attorney 'no property found and no part satisfied.' An execution in order to support the proceedings should show that the legal remedy provided thereby has been exhausted." (*Horrall v. Brassie,* 158 Ill. App. 526, syl.)

The same general principle is applied in cases of garnishment before judgment.

"Before the process of garnishment can issue, an affidavit must be made on behalf of the plaintiff which shall state, among other things, that the deponent 'Verily believes . . . that such defendant has not property liable to execution sufficient to satisfy the plaintiff's demand.' R. S. sec. 2753. It being a harsh remedy, the statute which gives it will not be extended by construction to cases not fairly within its words. It is safe to assume that it is not the intention of this

Madden v. Railroad Co.

statute to permit garnishment where the debtor has property liable to execution sufficient to satisfy the plaintiff's demand, for it has limited the right to cases where the defendant has not sufficient property. It is not intended that such a debtor shall be tied up by garnishment so long as he neither does nor contemplates doing some act which will justify an attachment against his property, because the creditor can not always know the true state of the debtor's property; and to make the remedy effective he is permitted to inaugurate this remedy by his affidavit that he verily believes that his debtor has not property liable to execution sufficient to satisfy his demand. But, if, in truth, it shall appear that the debtor has property sufficient to satisfy his demand, a case is shown where this remedy is not within the intention of the law. This process has been used in a case not intended by the lawmakers. Doubtless some liberality must be allowed in order to give the remedy efficiency. But where the property of the debtor is abundant for the satisfaction of the plaintiff's claim, there can be no case for garnishment; and where it is known to the affiant that the debtor has property subject to execution, sufficient, many times, to satisfy the plaintiff's demand, he can not honestly make the affidavit. To procure the process in such a case is an abuse of the remedy given by the statute." (*German American Bank v. The Butler-Mueller Co. and others,* 87 Wis. 467, 470, 58 N. W. 746.)

When the ordinary remedy by execution has proved to be ineffectual a garnishee may be summoned to appear and submit to examination for the purpose of obtaining a disclosure of property which could not be reached directly. While, as the Wisconsin court said, some latitude must be allowed in order to make the remedy efficient it can not be resorted to when there is plainly no occasion for it so far as the creditor is concerned, and when it results in unnecessary hardship and embarrassment to the garnishee.

The defendant received the property from a stranger to the proceeding and innocently contracted to transport it to Portland, Ore., and there deliver

it to another stranger. This contract, besides giving the defendant valuable rights, imposed upon it an obligation which might prove very embarrassing if not promptly fulfilled. The defendant was justified in assuming that the consignee was the owner of the goods. The garnishment summons asserted nothing to the contrary, and the memorandum on the summons asserted nothing to the contrary. The utmost effect to be given to the memorandum is that it identified the property concerning which the defendant was to answer. So far as the question of title was concerned, the defendant could say nothing except that it had no property belonging to McMann, since the goods were billed to Lilly. If issue were taken on this answer the defendant would be involved in a vexatious and expensive controversy over a matter in which it had no interest whatever. If the plaintiff had no case the defendant would have goods on its hands at the end of the litigation which the consignee might claim were converted by failure to deliver. The plaintiff had no right to place the defendant in this compromised situation when a simple execution would have served his purpose at once. If the question of McMann's ownership were so doubtful that the marshal would not levy without indemnity, the plaintiff should have assumed responsibility instead of attempting to cast it upon the defendant.

"The statute does not attempt, if it could do so, to cut off the rights of strangers to the litigation, or to compel a garnishee at his peril to decide questions of fact on which he has no means of knowledge." (*Walker v. Detroit, G. H. & M. R. Co.*, 47 Mich. 446, 13 N. W. 812.)

While no witness testified that the plaintiff furnished the information that went into the memorandum indorsed on the summons, it is perfectly clear that the garnishment proceeding was instituted for the express purpose of impounding the identical property

McIntosh v. Oil Co.

in controversy, which had in fact been within reach of execution ever since the judgment against McMann was rendered.

"This whole proceeding is in the nature of process to obtain satisfaction of a judgment. And the court may, and it is its duty, at any stage, upon its appearing that the garnishee process was improvidently issued, to dismiss the proceeding. Courts will not permit their process to be employed for improper and unauthorized purposes. (*Chanute et al. v. Martin,* 25 Ill. 63, 65.)

The judgment of the district court is reversed and the cause is remanded with direction .to enter judgment for the defendant.