No. 29,181.

J. E. ANDERSON, *Appellee*, v. WILLIAM C. DUGGER, *Appellant.*

(285 Pac. 546.)

Opinion filed March 8, 1930.

*Tom Harley*, of Wichita, for the appellant.

*Z. Wetmore* and *George M. Ashford*, both of Wichita, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action brought upon an order made by the city court of the city of Wichita, upon trial had in that court on the truthfulness of a garnishment answer made by the defendant herein.

The record disclosed the following situation:

On May 7, 1928, the plaintiff in this action, J. E. Anderson, recovered judgment in the city court of Wichita against one W. W. Mulkey for $505.09 and costs. At the time this judgment was obtained Mulkey owned a pool hall in the north part of Wichita. About three days before the judgment was entered Mulkey gave a chattel mortgage on the fixtures and equipment of the pool hall to one Blair, who was his son-in-law. The mortgage was for $1,600, which was more than the pool hall was worth, as it appears that it was subsequently sold for $1,200.

After the plaintiff obtained judgment he caused to be issued thereon four executions on various dates. On two of these levy was made on the cash in the cash register in the pool hall and each time a small amount was realized. The third and fourth executions were returned by the marshal "nothing found on which to levy."

The plaintiff Anderson was acquainted with the defendant Dugger. Dugger told him that he contemplated buying the pool hall from Mulkey. They discussed the matter and Anderson told Dugger to let him know if he made a deal. Thereafter Dugger reported to Anderson that he had negotiated with Mulkey and that they had entered into a written contract whereby Dugger was to buy the pool hall for $1,200; that he had given his check for $100 and was to pay the remaining $1,100 the next day. Anderson told Dugger that there was a mortgage on the pool hall and Dugger said that he would see to it that it was released. The next morning, which was on December 15, 1928, Dugger, together with Blair, the mortgagee, went to the courthouse and released it. Immediately after the mortgage was released the plaintiff Anderson caused garnishment summons to be issued on the judgment which Anderson had against Mulkey. Anderson and the marshal of the city court went to Dugger's place of residence immediately and served the garnishment on Dugger. The following conversation then took place, according to Anderson's testimony: Anderson asked, "Well, Bill, how is it?" Dugger replied, "It is all right." They then served the garnishment and Dugger said, "I am going down and settle with those fellows."

It further appears from Anderson's testimony that Dugger told him afterwards that when he went down to settle with those fellows he showed them the garnishment, and Mulkey said: "That money is not mine; that belongs to my stepson-in-law, Blair; the money will have to be paid to him. You can't do that." Mulkey, Blair and Dugger talked the matter over and finally concluded that Dugger should pay the money over to Blair, and Blair gave him a bill of sale. After the mortgage first above referred to was released on December 15, 1928, later during the same day a similar mortgage from Mulkey to Blair was recorded. This mortgage was different in terms and was made to run from December 5, 1928, to January 5, 1929, but was released on December 17, 1928, after the defendant Dugger had made settlement with Mulkey and Blair. After making settlement the garnishee Dugger filed an answer to the garnishment reading as follows:

"Made bargain with Mulkey but paid his son-in-law; Mulkey having turned the pool hall over to his son-in-law the day before."

Thereupon Anderson gave notice to Dugger that his answer in garnishment was unsatisfactory and demanded a trial of the truth of the same. A trial thereon was had in the case of *Anderson v. Mulkey* above referred to, and on December 31, 1928, judgment was entered therein by the city court against the garnishee Dugger for the unpaid balance of the original judgment which Anderson had against Mulkey in the total sum of $465.19. The garnishee Dugger failed and refused to pay said money into court as ordered by the judgment and thereafter this action was brought upon the judgment entered in the city court against the garnishee. Trial was had in the district court before a jury. The issues were found in favor of the plaintiff herein, and the defendant appeals.

The appellant raises three questions upon appeal. First, that the appellee did not exhaust his remedy by execution; second, that the evidence showed the appellant did not purchase the pool hall from Mulkey; and third, that at the time the garnishment was served there was no absolute liability of the appellant to Mulkey and that the liability, if any, was only contingent, so that the appellant was therefore not subject to garnishment.

We shall take these up in their order.

In support of the first proposition the appellant cites the case of *Madden v. Railroad Co.*, 89 Kan. 282, 131 Pac. 552. In that case goods belonging to the debtor were delivered to the railroad company and ordered shipped to a person other than the judgment debtor. Further, in that case it is pointed out that the railroad company had no knowledge that the goods belonged to the judgment debtor and had no reason to suppose they belonged to anyone except the consignee. The court took the view that a simple execution would have been the proper remedy. In the instant case the evidence shows that the defendant Dugger knew of the situation existing between Anderson and Mulkey; that he had full knowledge concerning Anderson's judgment against Mulkey and that the property concerning which he dealt belonged to Mulkey, subject to a mortgage to Blair. His original dealings were all with Mulkey, and the stepson-in-law, Blair, came into the picture only after the bargain had been made between Dugger and Mulkey. The two cases are not analogous in fact. Furthermore, it appears in the instant

case that the plaintiff had made numerous *bona fide* efforts to levy an execution. He had caused four executions to be issued and everything indicated that he had put forth diligent effort to collect his judgment by means of an execution. The mortgage standing against the pool hall was for more than the pool hall was worth. It was apparent to the marshal and to the plaintiff Anderson that there was no equity in the pool hall which could be realized upon a sale or execution, assuming that the mortgage was a valid mortgage. There is nothing in the record to show that the plaintiff Anderson had reason to believe that the mortgage was other than a *bona fide* mortgage, at the time the executions were issued, or that he then had any means of proving that the mortgage was fraudulent. Under such circumstances, where it appears that the property is mortgaged for as much or more than it is worth, it follows that an execution on the particular property so mortgaged would avail nothing. The law does not require the performance of a futile or useless act.

As to the second point urged by the appellant, the verdict of the jury disposes of this contention. It had the testimony of Anderson to guide it, which was to the effect that he and Dugger had talked about Dugger making the deal on the pool hall; that he had told Dugger about the mortgage after Dugger had told him that he had contracted to buy the pool hall; that Dugger was fully informed as to Anderson's judgment and that the matter of Blair being the owner of the property did not come up until after the garnishment had been served. When matters had reached this state, according to Anderson's testimony, Dugger went down to "settle with" Mulkey and told him about the garnishment, and Mulkey then said that the money belonged to Blair; that he would have to pay it over to Blair and take a bill of sale from Blair. At this stage of the matter Dugger should have consulted an attorney, but he chose not to do so and went ahead, acting as his own judge of the facts and of the law, assuming the responsibility of paying over the money to Blair and ignoring the garnishment. The verdict of the jury was a finding that the deal was in fact made with Mulkey and that the defendant was not justified in disregarding his obligation to Mulkey and paying over the money to Blair. The jury further determined that the mortgage was not a *bona fide* mortgage, and that the transaction was in effect an effort to defeat Anderson in the collection of his judgment.

We will now take up the last question urged by the appellant, to the effect that he should not be held liable because there was no absolute liability on his part to Mulkey on the contract of purchase, and that his liability, if any, was only a contingent liability. It must be borne in mind that under the provisions of R. S. 61-1222 the garnishee is obliged to answer concerning the amount owing by him to the judgment debtor, *whether due or not.* This point was discussed and decided adversely to the contention of the appellant in the cases of *Bank v. Dondelinger,* 103 Kan. 444, 175 Pac. 109, and *Winterscheidt v. Wilson,* 110 Kan. 649, 205 Pac. 600. Those cases construed the sections of the statute relative to garnishment proceedings in the district court, and among others construed section 7134 of the General Statutes of 1915, which is our present R. S. 60-954. The wording in the latter is: "From the time of the service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount . . . and of all debts due or to become due to the defendant." The wording of this section being to that extent identical with that of R. S. 61-1222, under which the instant proceeding was brought, the foregoing cases apply by analogy, and, following those cases, we hold that under the provisions of R. S. 61-1222 unmatured and contingent liabilities are properly subject to garnishment proceedings.

We find no error in the record, and the judgment is therefore affirmed.