NOT DESIGNATED FOR PUBLICATION

Nos. 115,159
115,615

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of:
S.R.-H., YOB 2007, a Female,
D.R.E., YOB 2006, a Male,
I.H., YOB 2008, a Male, and
K.H., YOB 2012, a Female.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed May 12, 2017. Reversed and remanded with directions.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Kansas City, for appellant natural mother.

*J. Shane Rockey*, of Rockey & Stecklein, Chtd., of Kansas City, for appellant natural father.

*Ashley Hutton*, assistant district attorney, and *Jerome A. Gorman*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*:  Judicial innovation can be a good thing—invention often yields better solutions to persistent problems. But that's not always true. This is such a case. The Wyandotte County District Court's innovative twist in this proceeding to terminate parental rights didn't solve a problem but, rather, deviated from what is statutorily permitted in a way that wound up materially disadvantaging the parents. We, therefore, reverse the termination order and remand for further proceedings consistent with what we outline as the appropriate remedy.

1

In advance of the termination hearing, the lawyers for the interested parties proposed this arrangement: (1) The district court should consider evidentiary proffers rather than live testimony at the hearing; (2) if that evidentiary record established the parents to be unfit, their unfitness would be unlikely to change in the foreseeable future, and the best interests of the children favored terminating parental rights—thus satisfying the standards for termination in K.S.A. 2016 Supp. 38-2269—the district court would enter a termination order; and (3) the district court would immediately stay the order for 90 days and give the parents another hearing then to show they had sufficiently improved their circumstances to warrant regaining custody of their children. The district court approved the arrangement at the start of the termination hearing. After entering and staying a termination order, the district court never really explained to the parents what was expected of them in the 90-day period and later summarily lifted the stay without affording the parents the opportunity to be heard, contrary to what they had been promised.

As we explain, the arrangement not only failed to conform to the statutory process for terminating parental rights outlined in the Revised Kansas Code for Care of Children, K.S.A. 2016 Supp. 38-2201 *et seq.*, but actually conflicted with it. And the way the district court handled the arrangement undercut the representation made to the parents. To be plain, a district court cannot enter and then stay an order terminating parental rights to afford the parents a last chance to avoid termination and doing so amounts to error.

Here, the State filed petitions in the spring of 2013 to have four children adjudged in need of care. S.R.H., I.H. Jr., and K.H are the children of I.H. Sr. and W.R. W.R. is also the mother of D.R.E., the fourth child, whose father is J.E. I.H. Sr. and W.R. have appealed the termination of their rights to parent their three children. W.R. has also appealed the termination of her rights as to D.R.E. Although J.E. participated in the district court proceedings, he has not appealed.

The children were formally determined to be in need of care in June 2013, and the district court approved reintegration plans later that summer. The record shows the plans were extended a number of times to allow the parents to satisfy the requirements. Based on the original reasons for considering the children in need of care and the parents' lack of progress on reintegration, the State filed a motion in November 2014 to terminate the parental rights of I.H. Sr., W.R., and J.E. Given the controlling issue on appeal and our resolution of it, we need not go through a detailed recitation of the district court proceedings leading up to the termination hearing in April 2015.

At the outset of the termination hearing, the district court outlined on the record the arrangement we have already described. The district court specifically stated that a termination order would be held in abeyance and could be set aside if the parents demonstrated significant strides toward reintegration. The State's proffer consisted of the factual assertions in the motion to terminate augmented by the assistant district attorney's somewhat rambling oral representation at the hearing. The lawyer for W.R. made a brief proffer. That record shows I.H. Sr. and W.R. chronically ingested marijuana and had a series of positive drug tests or missed drug tests that, under the circumstances, could be construed as circumstantial evidence of their continuing use of marijuana. Both of them also had difficulty maintaining suitable housing for the children and continuing employment, although I.H. Sr.'s problems were more pronounced. They also had left uncompleted other tasks in the reintegration plan requiring classes and counseling.

The district court found sufficient grounds to terminate the parental rights of I.H. Sr., W.R., and J.E. and entered an order to that effect. The district court then stayed the order for 90 days and scheduled a status conference for the end of July and an evidentiary hearing for August 17. The termination hearing devolved into what might be characterized as a free-form discussion among the lawyers, the assigned case worker, and the district court as to how the parents could go about getting the termination order set

3

aside. The colloquy, however, yielded no clearly defined set of tasks or benchmarks communicated to the parents as their target for obtaining relief 90 days later.

The district court held a status conference on July 31. The record on appeal contains no transcript of that conference. But we can tell what happened, in pertinent part, from the district court's undisputed recapitulation at the August 17 hearing, the transcript of which is part of the record. On July 31, the district court ordered I.H. Sr. and W.R. to take drug tests before leaving the courthouse. I.H. Sr. told the district court he would test positive for marijuana. The district court apparently accepted that admission and excused him from testing. W.R. left the courthouse without taking a drug test.

At the August 17 hearing—that had been scheduled ostensibly to allow the parents to explain what they had done to accomplish the reintegration plan in the preceding 90 days and why they should regain custody of their children—the district court summarily announced the stay of the termination order would be lifted. The district court cited I.H. Sr.'s admission of continued marijuana use and W.R.'s avoidance of the drug test. W.R. attempted to explain that she had left because she was late for work. The district court effectively cut her off. And the district court refused to hear any argument or receive any evidence about what either parent had otherwise done. I.H. Sr. and W.R. have appealed.

W.R. focuses her appeal on the shortcomings of the procedure the district court followed. I.H. Sr. also mentions that issue but concentrates on the sufficiency of the evidence to support the termination order. We put aside the sufficiency challenge. The procedural challenge requires us to assess what the district court did in light of what the statutory scheme for terminating parental rights actually permits. The point presents a question of law over which we exercise unlimited review. See *State v. Turner*, 293 Kan. 1085, 1086, 272 P.3d 19 (2012) (interpretation of statute presents question of law); *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (appellate court exercises unlimited review over questions of law); *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229

(when material facts undisputed, issue presents question of law), *rev. denied* 303 Kan. 1079 (2015). As we explain, the inconsistencies between the statutory process in the Revised Kansas Code for Care of Children and the district court's approach to terminating parental rights in this case lead us to reverse the termination order.

As provided in K.S.A. 2016 Supp. 38-2269(a), termination of parental rights requires the district court to find the parent "unfit . . . to properly care for a child" *and* that the "conduct or condition" constituting unfitness "is unlikely to change in the foreseeable future." The district court must then find termination to be in the child's best interests. K.S.A. 2016 Supp. 38-2269(g)(1). Key here, the judicial finding comporting with K.S.A. 2016 Supp. 38-2269(a) entails both a status component—unfitness—and a temporal component—persistence for the predictable future. Here, the district court determined by clear and convincing evidence that both components had been proved. See K.S.A. 2016 Supp. 38-2269(a) (clear and convincing evidence standard); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014) (same).

The Revised Kansas Code for Care of Children makes no allowance for staying a termination order upon those findings. The reason would seem to be facially evident: Any appreciable delay would be legally and logically incompatible with the temporal component required for termination. If the conduct or condition rendering the parent unfit were genuinely unlikely to change, then there would be no point to the stay. The law does not endorse, let alone mandate, purposeless acts. See *Anderson v. Dugger*, 130 Kan. 153, 156, 285 P. 546 (1930); *State v. Ludes*, No. 114,287, 2016 WL 6024640, at *5 (Kan. App. 2016) (unpublished opinion). Conversely, if there were a real prospect for change, the district court would have erred in entering a termination order in the first place. Moreover, a stay would clamp a hold on any permanency hearing and modification of the permanency plan for the children upon termination of parental rights, contrary to the design and purpose of K.S.A. 2016 Supp. 38-2264 (permanency planning) and K.S.A. 2016 Supp. 38-2270 (custody for adoption).

5

We, therefore, have little difficulty concluding the district court's decision to stay its termination order, effectively extending the parents' reintegration plan, amounted to error. Shaping a remedy in this case presents a more complex challenge. We start by taking a step back to look at what I.H. Sr. and W.R. have at stake. Parents have a fundamental right to raise their children. *Santosky v. Kramer*, 455 U.S. 745, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Protection for that relationship has roots in natural law and religious teachings, and the right represents the archetype substantive liberty interest shielded in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest) (plurality opinion); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"); 67A C.J.S., Parent and Child § 3 (noting judicial authority characterizing parent-child relationship as reflecting "natural law and divine providence"). The importance of that right is reflected in the heightened standard the district court must apply in judging the evidence on termination.

Here, I.H. Sr. and W.R. agreed to a presentation of the evidence that eliminated live testimony from witnesses sworn to tell the truth and subject to cross-examination—a procedure that stripped away the principal tools for judging credibility. See *In re Guardianship & Conservatorship of L.M.H.*, No. 108,297, 2013 WL 2395900, at *13 (Kan. App. 2013) (unpublished opinion). But they did so only in exchange for another hearing in front of the district court 90 days later to show substantial progress toward again parenting their children. In our view, I.H. Sr. and W.R. did not receive the benefit of their exchange. The district court afforded them no opportunity to set forth their case for retention of their parental rights and summarily lifted the stay, thereby extinguishing those rights.

6

Although we have found the district court never should have marched down that road by staying the termination order, we believe that given the fundamental stature of the right, the district court had an obligation to hear what I.H. Sr. and W.R. would have presented at the August 17 hearing. So in this specific situation, I.H. Sr. and W.R. are entitled to relief approximating in a reasonable way what they were denied. A mechanical remedy would offer them a hearing to show what their circumstances were on August 17, 2015. But, given the passage of time, that really makes no practical sense. Their current ability to parent their children may have changed markedly either to the better or for the worse.

Because we are reversing only the termination order, S.R.H., I.H. Jr., K.H., and D.R.E. all remain children in need of care. Accordingly, on remand, the district court should direct that a new reintegration plan be prepared and that I.H. Sr. and W.R. be given a reasonable time—and in no event less than 90 days—to satisfy the plan. Such a remedy places I.H. Sr. and W.R. in a position similar to the one they occupied in advance of the August 17 hearing and also effectuates the overarching purpose of the Revised Kansas Code for Care of Children with due consideration for the fundamental character of the right at issue. The district court should also enter such other orders as may be necessary to accomplish that remedial objective.

The district court's order terminating the parental rights of I.H. Sr. and W.R. is reversed, and the case is remanded with directions for proceedings consistent with this opinion.