NOT DESIGNATED FOR PUBLICATION

No. 123,066

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MID-KANSAS WOUND SPECIALISTS, P.A.
and EMERGENCY SERVICES, P.A.,
*Appellees*,

v.

THOMAS A. MARTIN;
WE, LLC; TAME, LC; TAME IV, LC; TAME VII, LLC,
*Appellants*,
and
NANCY MARTIN; NANCY MARTIN, TRUSTEE OF THE NANCY MARTIN LIVING TRUST;
THOMAS MARTIN, TRUSTEE OF THE THOMAS MARTIN LIVING TRUST;
MARCO LC; TAME II, LC; TAME III, LC; TAME V, LC; TAME VI, LLC;
NANCY'S LC; VACATIONS, LLC; and MICHAEL MARTIN,
*Defendants*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed July 1, 2021. Appeal dismissed.

*Christopher Joseph*, of Joseph, Hollander & Craft LLC, of Lawrence, *Christopher M. McHugh*, of the same firm, of Kansas City, Missouri, and *Carrie E. Parker*, of the same firm, of Topeka, for appellants.

*Todd E. Shadid*, of Klenda Austerman LLC, of Wichita, for appellees.

Before POWELL, P.J., ATCHESON, J., and RICHARD WALKER, S.J.

PER CURIAM: The Sedgwick County District Court held Thomas A. Martin and four of his affiliated business entities—defendants in a sprawling, multimillion dollar

civil action—in contempt and imposed money sanctions against them for violating pretrial orders requiring them to disclose assets and to report certain types of financial transactions. The defendants have appealed the contempt citation. But, as the plaintiffs argue and the record shows, the defendants have paid the sanctions and, thus, have acquiesced in the contempt judgment. A party cannot both acquiesce in a judgment and appeal it as wrongfully entered. Kansas law treats those as mutually exclusive courses of actions. We, therefore, dismiss this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Given our resolution of this appeal, much of the factual and procedural history of both the underlying litigation and the allied contempt proceeding recede into the background of the loosely informative though legally irrelevant. In 2017, Mid-Kansas Wound Specialists, P.A., and Emergency Services, P.A., sued Martin, his ex-wife Nancy, and a number of Martin's corporations to recover millions of dollars Nancy embezzled from them over the course of her employment. The plaintiffs have taken a default judgment against Nancy for $11 million. As of this appeal, the suit remained unresolved against Martin and the other defendants. We neither offer nor intend to intimate any views whatsoever about the merits of plaintiffs' underlying claims against the defendants.

The record suggests Martin has assets worth a good deal more than the judgment against Nancy. This litigation has been contentious, and Martin appears to have tested the district court's patience more than a few times with dilatory maneuvers and a lackadaisical attitude toward discovery. We again have no opinion on the root cause of those apparent problems and no reason to parcel responsibility between lawyer and client. The record on appeal indicates Martin has changed lawyers at least a couple of times during the litigation. At the plaintiffs' request, the district court entered an order requiring Martin and various business entities to disclose their assets and prohibiting them from disposing of at least some of those assets without notice and, if requested, judicial

2

approval. For purposes of this appeal, the details of those requirements have no immediate legal significance.

Plaintiffs filed a motion asking the district court to find Martin and several of the businesses in contempt for violating the pretrial order. The district court held an evidentiary hearing spread over three nonconsecutive days between October 2018 and October 2019. After receiving proposed findings of fact and conclusions of law from the parties, the district court entered a lengthy order on March 6, 2020, finding Martin and WE, LLC; Tame, LLC; Tame VI, LLC; and Tame VII, LLC in contempt and imposed sanctions requiring them to pay the plaintiffs: (1) about $55,000, reflecting an improper disbursal of assets, that would be a credit against any judgment the plaintiffs might ultimately obtain against the defendants in the underlying litigation; (2) $25,000 for incomplete and dilatory compliance with the pretrial order; and (3) reasonable attorney fees and costs for bringing the contempt motion and otherwise seeking compliance with the pretrial order. The district court ordered Martin and those entities to tender $79,921 to the clerk of the district court to be disbursed to the plaintiffs if they obtained a judgment or settlement in the underlying case and otherwise half to the plaintiffs with half returned to those defendants. The district court ordered Martin to pay the plaintiffs $50,000 for transferring assets in violation of the pretrial order; the payment would be credited against any judgment the plaintiffs obtain. The district court also imposed additional monetary sanctions if Martin and the corporations didn't make the required payments within three months, six months, or nine months of the entry of the March 6 contempt order.

Martin and the four corporate entities found to be in contempt are united in interest and have been represented by the same lawyers in the underlying litigation and in the contempt proceedings. Going forward in this opinion, we refer to them collectively as the contempt defendants.

The contempt defendants filed a notice of appeal challenging the district court's March 6 order. See K.S.A. 20-1205 (party adjudicated in contempt may appeal ruling); see also *In re J.T.R.*, 47 Kan. App. 2d 91, 94, 271 P.3d 1262 (2012) (civil contempt order appealable independent of and without final judgment in underlying litigation). The district court then set an appeal bond of $300,000 that the contempt defendants could post half in cash and half through a surety. See K.S.A. 20-1205 (district court may stay contempt judgment upon posting approved bond). In the meantime, the plaintiffs had issued garnishments to third parties managing brokerage accounts for Martin to seize any of his assets they held to satisfy the monetary sanctions imposed in the contempt order. Martin filed a motion to halt the garnishments. The district court held a hearing on the motion on June 4—the day before the first monetary sanction for noncompliance would go into effect—at which the lawyers made arguments for their respective clients. The district court declined to forestall the garnishments.

At the hearing, the contempt defendants' lawyer informed the district court he received $250,000 from Martin before the garnishments were issued and was holding that money in the firm's trust account. He represented the garnishments effectively froze the accounts, preventing Martin from accessing funds in them in excess of the contempt sanctions. The plaintiffs' lawyer questioned whether the garnishments would have that effect and declined to release the garnishments. Neither side presented evidence on that point or anything else during the hearing.

Sometime after the June 4 hearing, the contempt defendants paid the sanctions and attorney fees, thus satisfying the contempt judgment. The record indicates the total amount was a little less than the $250,000 Martin had given his lawyers before the hearing. Nevertheless, the contempt defendants perfected and continued to pursue this appeal of the contempt order.

In their opening brief, the contempt defendants argue the district court's order had characteristics of a criminal contempt punishment rather than civil contempt sanctions and they had not been afforded constitutional due process and other procedural protections required in a criminal contempt proceeding. See *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 156, 323 P.3d 184 (2014); *Baker v. Miller*, No. 117,520, 2018 WL 4655897, at *10 (Kan. App. 2018) (unpublished opinion) (Atcheson, J., concurring) (defendant accorded greater procedural protections in criminal contempt adjudication than in civil contempt adjudication). In their countering brief, plaintiffs submit the contempt defendants had acquiesced in the contempt order and, therefore, their appeal should be dismissed. They, of course, also address the contempt defendants' substantive arguments. The contempt defendants offered a reply brief explaining why they had not met the legal test for acquiescence even though they paid the contempt sanctions.

Given the briefing, both sides have had the opportunity to address acquiescence, so the issue has been fairly joined, and we may consider it. We do not see any material conflict about the circumstances bearing on acquiescence. The issue, then, presents a question of law we may take up without a remand to the district court to assess inconsistent testimony or to resolve other disputed evidence. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (appellate court exercises unlimited review over question of law); *State v. Mejia*, 58 Kan. App. 2d 229, 231-32, 466 P.3d 1217 (2020) (When the material facts are undisputed, an issue presents a question of law.).

Conceptually, the acquiescence doctrine is easy to state, and that statement seems both logical and fair:  A prevailing party cannot accept the benefits of a judgment and then complain about errors in the judgment on appeal; likewise, a losing party cannot voluntarily satisfy the burdens of an adverse judgment and continue complaining on appeal about errors in the judgment. *Alliance Mortg. Co. v. Pastine*, 281 Kan. 1266,

1271, 136 P.3d 457 (2006); *Security National Bank of Kansas City v. Tripwire Operations Group, LLC*, 55 Kan. App. 2d 295, 299-300, 412 P.3d 1030 (2018). Kansas appellate courts treat the simultaneous acceptance of or compliance with a judgment and pursuit of an appeal attacking the judgment as impermissibly inconsistent legal positions. See *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 495, 866 P.2d 1044 (1994); *Security National Bank*, 55 Kan. App. 2d at 299-300. Despite the comparative ease in defining acquiescence abstractly, the appellate courts have not fashioned a predictive analytical test to be applied across cases. Rather, acquiescence cutting off an appeal turns on the facts of a given case—ad hoc resolutions tending to impede the development of cohesive standards. *Younger v. Mitchell*, 245 Kan. 204, 209, 777 P.2d 789 (1989) (acquiescence depends upon case-specific facts); *Security National Bank*, 55 Kan. App. 2d at 299-300 (same); cf. Law, *Avoiding a Quagmire: Acquiescence in a Judgment as a Bar to Appeal*, 89 J.K.B.A. 30, 32 (September/October 2020) (some Kansas appellate cases on acquiescence "may be impossible to reconcile").

Drawing on that situationally developed authority, we conclude a judgment debtor does not acquiesce in a judgment by failing to post a supersedeas bond the district court has set at the judgment debtor's request. Cf. *Vap v. Diamond Oil Producers, Inc.*, 9 Kan. App. 2d 58, 61, 671 P.2d 1126 (1983) (failure to *request* supersedeas bond evidence of acquiescence); 9 Kan. App. 2d at 62 (Foth, C.J., concurring) (failure to *post* bond set by district court not indicative of acquiescence). Conversely, the judgment debtor's failure to oppose in some fashion a garnishment yielding funds satisfying the judgment amounts to acquiescence precluding appeal. 9 Kan. App. 2d at 61-62; 9 Kan. App. 2d at 62 (Foth, C.J., concurring). The *Younger* court similarly recognized that a judgment debtor actively resisting a garnishment does not acquiesce in the judgment. 245 Kan. at 207-08. Paying a judgment typically amounts to acquiescence cutting off any appeal. See *Huet-Vaughn v. Kansas State Bd. of Healing Arts*, 267 Kan. 144, 147, 978 P.2d 896 (1999); *Cybertron International, Inc. v. Capps*, No. 122,439, 2022 WL 128842, at *8 (Kan. App. 2022) (unpublished opinion).

Here, the record on acquiescence presents competing considerations, and we recognize the circumstances do not cut definitively one way or the other. Weighing against acquiescence, Martin asked the district court to halt the garnishments, albeit unsuccessfully. He requested a supersedeas bond, and the district court set one. But Martin did not post the bond. The contempt order contained additional financial penalties if Martin did not make the required payments by specified dates. Martin avoided those penalties by satisfying the requirements of the contempt order. The appellate courts have recognized that a party need not risk a contempt citation by refusing to comply with an order, and compliance under such a coercive threat typically would not amount to acquiescence cutting off an appeal. *In re Metcalf Assocs.-2000*, 42 Kan. App. 2d 412, 423-24, 213 P.3d 751 (2009). A touchstone for acquiescence is the voluntariness of the payment. See *Younger*, 245 Kan. at 206; *Security National Bank*, 55 Kan. App. 2d at 300.

On the other side of the acquiescence ledger, Martin did make the payments required in the contempt order after failing to persuade the district court to set aside the garnishments. Tendering the required performance and payments looks and sounds a lot like acquiescence. At that point, Martin was no longer resisting the garnishments and complied with the order to avoid the seizure of the money in his accounts—a course of conduct we view as more acquiescent than that of the corporate defendant in *Vap* when it simply allowed a garnishment to go forward without objection and, thereby, acquiesced in the judgment. We have nothing in the record explaining why Martin paid the amounts rather than have the accounts garnished. But the decision necessarily entailed a conscious choice presumably made on some assessment, however rudimentary, of comparative costs and benefits.

Martin never asked the district court to stay the contempt order without a supersedeas bond to allow him to appeal. From the tenor of the June 4 hearing, we reasonably infer the district court would not have been especially enamored of such a request. And the law does not require a party to undertake a futile act. *Anderson v.*

7

*Dugger*, 130 Kan. 153, 156, 285 P. 546 (1930) ("The law does not require the performance of a futile or useless act."); *Allen v. Attorney Gen. of State of Maine*, 80 F.3d 569, 573 (1st Cir. 1996) ("The law, after all, should not require litigants to engage in empty gestures or to perform obviously futile acts."). But our after-the-fact surmise doesn't really excuse Martin from having taken the comparatively minimal step of at least inquiring of the district court.

More to the point and of more significance, Martin did not ask the district court to modify the $300,000 supersedeas bond. At the June 4 hearing, Martin's lawyer was in a position to immediately post a $250,000 cash bond. But he never offered that alternative to the district court or the plaintiffs. A cash bond of that size under the district court's immediate control might have had advantages over trying to collect $150,000 from a surety in no hurry to pay were Martin to lose on appeal and resist satisfying the judgment. Again, Martin never took that entirely reasonable step in seeking a bond modification. Along that same line, Martin's lawyer informed the district court that the garnishments had frozen specific accounts—a point of contention. Even so, the lawyer did not represent that Martin's considerable wealth was otherwise so illiquid he could not secure an additional $50,000 to post the original supersedeas bond. For that reason, we also do not see the additional payment due on June 5 to be coercive in a way that forced Martin to satisfy the original financial obligations in the contempt order rather than permitting the garnishments to go forward, attempting to negotiate changes to the supersedeas bond, or posting the initial bond.

For purposes of this appeal, we assume Martin might have faced additional contempt sanctions if the garnishments had not yielded funds to cover the payments required by the order and he had not posted a satisfactory bond. But that's no more than an entirely speculative harm on these facts. Martin satisfied the contempt judgment before the plaintiffs even sought additional and more coercive sanctions. See *Baker*, 2018 WL 4655897, at *10 (Atcheson, J., concurring) (party otherwise able to comply with

district court order may face financial penalties or incarceration as civil contempt sanctions until agreeing to comply). Had the plaintiffs taken that step, Martin's compliance with the original order under the gun of such a legal threat might not have constituted acquiescence. See *Martin v. Phillips*, 51 Kan. App. 2d 393, 400, 347 P.3d 1033 (2015). We need not rule on that wholly remote hypothetical. By the same token, however, it cannot advance Martin's argument on appeal against acquiescence.

A defendant's voluntary payment of a money judgment does not constitute acquiescence in a divisible, nonmonetary form of relief (like an injunction) imposed in the same judgment that can be reviewed on appeal independently of the money award. See *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 231, 597 P.2d 1010 (1979); *Richardson v. Murray*, 54 Kan. App. 2d 571, 586, 402 P.3d 588 (2017). But that exception to the acquiescence doctrine does Martin no good. The contempt sanctions in the district court's order were both of a kind and interlocking. No part of the contempt order remained open after Martin paid the sanctions.

Under the particular facts here, we find Martin acquiesced in the contempt order the district court entered on March 6, 2020, when he made the required payments after the June 4, 2020 hearing. Martin then faced no immediately coercive threat of harsher sanctions. He could have allowed the garnishments to proceed rather than pay. He neither sought a modification of the supersedeas bond the district court set nor categorically established he could not post the bond. The constellation of circumstances depicts acquiescence of the kind that cuts off the right to appeal, since Martin chose to satisfy the burdens imposed on him in the contempt judgment.

We, therefore, dismiss Martin's appeal. Given this disposition of the contempt proceeding, we have no need (and no legal reason) to address the substantive challenges Martin has raised. So we offer no opinion about them.

Appeal dismissed.