No. 23,136.

PETER F. WINTERSCHEIDT et al. (EMMA WEBER, *Appellant*), v. ED-
WARD PETER WINTERSCHEIDT et al. (F. M. WILSON et al., *Appel-
lants*, LEN ROBERTS, Interpleader, *Appellee*).

SYLLABUS BY THE COURT.

1. GARNISHMENT—*Immature and Contingent Liabilities Subject to Garnish-
   ment.* Under the statute relating to garnishment, and following *Bank v.
   Dandelinger,* 103 Kan. 444, 175 Pac. 109, it is held that the unmatured and
   contingent liabilities involved herein were properly reached by the garnish-
   ment.

2. SAME—*Service of Summons—Appearance Waives Defects in Service.* The
   appearance and answer of Emma Weber, the defendant in the Roberts case,
   precluded her from subsequently questioning the service of the garnishment
   summons.

3. SAME—*Orders in Garnishment Proceedings Properly Made.* The orders
   appealed from held to have been properly made and with sufficient juris-
   diction.

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed
March 11, 1922. Affirmed.

*T. A. Moxcey,* of Atchison, for the appellants.
*S. M. Brewster,* of Topeka, and *W. F. Means,* of Hiawatha, for the appellee.

The opinion of the court was delivered by

WEST, J.: Christian Winterscheidt died in 1915, owning 277 acres
of land in Brown county. He left one-eighth of his estate to each of
his eight children. Seven of them sold their interest in 57 acres of
the land to their brother, John G. Winterscheidt, he agreeing to
stand charged to the others for $425 each, and executed a quitclaim
deed to them covering his undivided interest in the remaining 220
acres. This deed was deposited with a local bank to stand as se-
curity that when the 220-acre tract should be sold he would pay
them from his share of the proceeds the amount due for their shares
in the 57 acres. The deed was never taken from the bank or de-
livered or recorded.

Emma Weber, one of the sisters, had in 1918 given a mortgage on
her one-eighth interest to the Citizens State Bank of Horton for
$2,500, which was conceded to be a first lien. In January, 1919, the
heirs, acting by Jacob J. Winterscheidt, contracted with Anna M.
Burkart to sell her the 220-acre tract. The amount of the sale
price in the contract was $39,300, which included a year's rent of
$1,300. The purchaser paid into the bank $200, and the sellers

agreed to make and deposit a deed to be held in escrow until the deal should be closed, they to furnish an abstract which the purchaser was to have a reasonable time to examine: If the purchaser should fail to make the payments she was to forfeit all amounts paid. The deed was made and deposited, and the abstract furnished, and the requirements thereon were such that a suit to quiet title was deemed necessary, and this is that suit.

Emma Weber's husband, M. J. Weber, had become heavily in debt, and she had signed a number of his notes and had given her mortgage for the $2,500, already referred to, for money to be used by him. He owed Len Roberts over $4,000 on notes which his wife had signed as surety. She owed a similar amount on a homestead which was mortgaged to Wilson, and a second mortgage to the Farmers State Bank for $840. On June 24, 1919, Len Roberts sued Emma Weber on his claim and caused garnishment summons to be issued to Anna M. Burkart, the summons being served on her on the same day. On June 26, 1919, Emma Weber and husband gave the mortgage on her undivided interest in the 220 acres to Wilson and the Farmers State Bank, already referred to. This was filed June 26. On November 24, Emma assigned her claim against her brother, John Winterscheidt, for $425 to Wilson to hold as security for her debt to him. November 24, 1919, Roberts recovered judgment against Emma Weber for his debt, no order being made in reference to the garnishment, the decision thereon being reserved.

Mrs. Burkart filed an answer setting up her contract of purchase and her information concerning all mortgages, but none of the mortgagees were brought in as parties, or appeared. Len Roberts appeared as interpleader in the suit, and set up that he had a lien by reason of his garnishment which he claimed was ahead of the interest of the Farmers State Bank and Wilson, both of which parties answered, setting up their mortgages. Wilson also set up the assignment of Emma Weber of her claim against her brother.

On December 22, 1919, the court quieted title in the Winterscheidt heirs subject to the rights of Mrs. Burkart and her contract against all the defendants, except the mortgagees and lienholders, and found that on consummation of the sale the proceeds should be paid into court, and the mortgages of the State Bank of Horton should be paid, and the balance of her one-eighth, less the costs, should be held to await the decision in controversy between Roberts and Wilson and the Farmers State Bank.

Judgment was given against Emma Weber for the Citizens State Bank of Horton which is a first lien. On February 9, 1920, the court decided for the interpleader in the matter against Wilson and the bank, who appeal.

It is contended that only a contingent liability was garnisheed in this case, and that such liability is not subject to garnishment proceedings. Counsel say: "It cannot surely be claimed that anything was owing from Mrs. Burkart until after the title was examined and requirements if any made complied with." The statute (Gen. Stat. 1915, § 7120) entitles any creditor to proceed by garnishment against any person "who shall be indebted to or have any property, real or personal, in his possession or under his control belonging to such creditor's debtor."

Section 7126 requires the garnishee to answer "whether he was at the time of the service of the garnishee summons or has since become indebted or under any liability to the defendant named in the notice in any manner or upon any account, specifying, if indebted or liable, the amount, the interest thereon, the manner in which evidenced, when payable, whether an absolute or contingent liability, and all the facts and circumstances necessary to a complete understanding of such indebtedness or liability."

Section 7134 provides that from the time of the service of the summons upon the garnishee "he shall stand liable to the plaintiff to the amount of the property, moneys, credits and effects in his possession or under his control, belonging to the defendant or in which he shall be interested, to the extent of his right or interest therein, and of all debts due or to become due to the defendant, except such as may be, by law, exempt from execution."

It is true that section 7135 provides that no judgment shall be rendered upon a liability arising "by reason of any money or other thing owing from him to the defendant, unless before judgment against the defendant it shall become due absolutely and without depending on any future emergency," but the same subdivision also provides that "judgment may be given for any money or other thing owing, although it has not become payable, in which case the garnishee shall not be required to pay or deliver it before the time appointed by the contract."

*Lumber Co. v. Trust Co.*, 54 Kan. 124, 37 Pac. 983, is quoted from. It was there said, touching the trust agreement involved, that until that was carried out it could not be determined that any portion of

the fund would be unexpended, and that until that time the fund was not subject to garnishment. The principal thing decided in that case was that a garnishment proceeding simply substitutes the plaintiff for the defendant in the enforcement of any liability against the garnishee and gives him no greater right than the debtor himself possesses. In *Bank v. Dondelinger*, 103 Kan. 444, 175 Pac. 109, it was held that a person indebted to the defendant on nonnegotiable promissory notes not yet due, and payable on the happening of certain contingencies, is subject to garnishment. The defendant was said to have overlooked the provisions of the statute requiring the garnishee to answer respecting contingent as well as absolute liabilities, and making him liable for debts to become due as well as debts due, and also the provision of section 7135 authorizing judgment for money owing, but not yet payable, but postponing payment.

If, by the garnishment proceedings, the plaintiff was placed in the position of Mrs. Weber, then when the contract for the sale of the 220 acres of land should be carried out Mrs. Burkart would be owing the plaintiff instead of Mrs. Weber, and it is impossible to read section 7135 without concluding that just such a contingency and future liability were intended to be reached by garnishment proceedings.

It is argued that the $425 owing to Emma Weber from her brother, John, could not be reached by garnishment service on Anna M. Burkart. Counsel say her one-eighth interest would amount to $4,662.50, on which there was a first mortgage to the Citizens State Bank for $2,500 and interest, amounting to $2,617.12, which would leave $4,045.38 in controversy between Wilson and the Farmers State Bank; that Emma Weber had a claim of $425 against her brother, John G. Winterscheidt, secured by a lien on his one-eighth interest in the land, and he was not garnished as creditor, and that no lien therefor had been decreed when Roberts garnished, and none was decreed until December, 1919. To this it is replied that Emma Weber has not appealed; that she cannot now raise that question in this suit. Counsel rejoin that Roberts, instead of interpleading Wilson and the Farmers State Bank, filed an interplea in this suit, based on the garnishment he had obtained in the Weber action, that as Wilson and the Farmers State Bank were never brought in as interpleaders in the Roberts case, the judgment therein would be without effect as to them. The litigation now before us,

however, appears to involve and include all the parties and matters affected by the orders appealed from.

It is claimed that the garnishment is invalid because not properly served as provided by section 231 of the civil code. But Mrs. Weber appeared and answered and moved to discharge the garnishment on July 24, 1919, and not until November 24 did she object to the manner of the service. The grounds of the motion were that no proper affidavit was filed, no proper bond was given, the allegation and answer were not true, and no sufficient service of summons was made in the case and none ever made on Emma Weber. This fourth ground was not added until November 24, so it appears that Emma Weber had already submitted herself to the jurisdiction of the court by her answer, thereby waiving any invalidity in the service.

An examination of the record indicates that the orders complained of were properly made, and with sufficient jurisdiction.

Such orders are, therefore, affirmed.