Roy KIRBY, Trustee in Bankruptcy,
Appellant,

v.

UNITED STATES of America,
Appellee.

In The Matter of ALLEN BROTHERS
TRUCK LINES, INC., Bankrupt.

No. 7423.

United States Court of Appeals
Tenth Circuit.

April 6, 1964.

Aubrey Neale, Coffeyville, Kan. (Ray A. Neale, Coffeyville, Kan., with him on the brief), for appellant.

Joseph Kovner, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Newell A. George, U. S. Atty., and Melvin M. Gradert, Asst. U. S. Atty., Topeka, Kan., with him on the brief), for appellee.

Before PICKETT, LEWIS and SETH, Circuit Judges.

PICKETT, Circuit Judge.

At issue here is the validity of a federal tax lien as against the assertion of a trustee in bankruptcy that it is merely a priority tax claim subject to the greater priorities of administration expenses and wage claims under Section 64 of the Bankruptcy Act (11 U.S.C. § 104). Prior to bankruptcy, the lien was claimed on proceeds of an incompleted sale by a taxpayer of operating rights as a common carrier in Kansas. The referee concluded that because of the executory nature of the contract involved, there was nothing owing to the taxpayer-bankrupt which constituted "property" or "rights to property", to which the tax lien could attach. On review, the district court reversed, and the trustee perfected this appeal.

The facts are not in dispute. The bankrupt, Allen Brothers Truck Lines, Inc., operated an intrastate common carrier under authority of a certificate of convenience and necessity issued by the Kansas State Corporation Commission. Prior to adjudication on its voluntary petition, the bankrupt contracted to sell its certificate to Clifford O. Palmer. The total sale price was $5,500.00, of which $2,500.00 was paid upon execution of the agreement, with the remaining $3,000.00 to be placed in escrow for payment to the seller upon approval of the transfer by the Corporation Commission. Thirteen days prior to the adjudication in bankruptcy, Palmer was duly notified of the tax levy on all obligations owing by him to the bankrupt. Following receipt of the notice of levy, but prior to adjudication, Palmer placed the $3,000.00 with his attorney, J. W. Scovel, as escrow holder. After adjudication, the trustee obtained an order permitting him to complete the contract, and subsequently applied to the Corporation Commission for approval of the transfer. Upon learning of the Commission's informal approval of the transfer, the trustee made a demand upon Scovel to deliver to him the $3,000.00. This demand was refused because of the tax levy and final demand served on Palmer by the Internal Revenue Service.

■ No contention is made that the certificate of convenience and necessity was not property within the meaning of the statute,[1] therefore the sole question at issue is whether, at the time of service of notice of the tax levy, Palmer's obligation to the bankrupt was of such character as to constitute "property" or "rights to property" within the meaning of Section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321.[2] The trustee agrees that "if Palmer's obligation to the bankrupt constitutes property, then it follows that such obligation would be subject to a tax levy under Section 6321 * * * "[3]

The transfer of certificates of necessity and convenience is provided for by Kansas statute,[4] requiring application by both the transferor and the transferee, and a hearing before the Kansas State Corporation Commission. In the referee's finding of fact, adopted in toto by the district court, it was found that shortly after the contract for sale of the certificate was executed, both Allen and Palmer made written application to the commission for the transfer, and that a

1. See Barutha v. Prentice, 7 Cir., 189 F. 2d 29, cert. denied 342 U.S. 841, 72 S.Ct. 69, 96 L.Ed. 635; Richardson v. National Acceptance Co. of Chicago, 7 Cir., 179 F.2d 1, 15 A.L.R.2d 876, cert. denied 339 U.S. 981, 70 S.Ct. 1029, 94 L.Ed. 1385.

2. 26 U.S.C. § 6321 provides:
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

3. State law is determinative of the nature and extent of the taxpayer's interest in the property sought to be reached by a federal tax lien, and it is only after a lien attaches that federal law will be applied to determine the relative priorities of competing liens. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L. Ed.2d 1365; United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192; United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; Allan v. Diamond T Motor Car Co., 10 Cir., 291 F.2d 115. The federal taxing statutes create an attachment and garnishment procedure, including service of notice, which takes the place of the ordinary garnishment in court through which a creditor normally perfects a lien upon a debt. United States v. Eiland, 4 Cir., 223 F.2d 118. See 26 U.S.C. § 6331.

Treas.Reg. § 301.6331-1 provides in part:
" * * * Property subject to a Federal tax lien, which has been sold or otherwise transferred by the taxpayer, may be seized in the hands of the transferee or of any subsequent transferee. Levy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy. * * * "

4. Kansas Gen.Stat.1961 Supp. § 66-1,118.

hearing was scheduled thereon. The hearing was held on April 12, 1962, five days prior to Allen's adjudication in bankruptcy, and the matter was taken under advisement by the commission.[5] The gist of the trustee's argument is that since a certificate cannot be transferred without the consent of the commission, and since that consent had not been given on the date the levy was served, Palmer's obligation did not constitute "property" or "rights to property" belonging to Allen within the meaning of 26 U.S.C. § 6321. The trustee asserts that the contract was terminated upon bankruptcy and that his assumption of it was necessary before anything became due from Palmer to Allen. Therefore, he concludes that since no lien existed prior to bankruptcy, there was none which attached to the escrowed fund when he assumed the contract.

■ No Kansas case was cited to the Court, nor have any been found, which reveal the nature of the respective rights of the transferor and transferee in such a certificate prior to commission approval. But, whatever the exact nature of those rights, they at least constitute a contingent liability, and under the law of Kansas, unmatured and contingent liabilities are subject to garnishment. Bridgeport Mach. Co. v. Early, 133 Kan. 137, 298 P. 796; Anderson v. Dugger, 130 Kan. 153, 285 P. 546; Winterscheidt v. Winterscheidt, 110 Kan. 649, 205 P. 600; Farmers' & Merchants' Bank v. Dondelinger, 103 Kan. 444, 175 P. 109. Moreover, this Court has previously held that under Kansas law contingent rights in property may be transferred. Marteney v. United States, 10 Cir., 245 F.2d 135, and cases cited. In the absence of a controlling interpretation by the state court, " * * * we will accept the federal trial judge's interpretation of state law unless we are convinced that such interpretation is clearly erroneous." Missouri Pacific R. Co. v. American Refrig. Transit Co., 10

Cir., 328 F.2d 569; Robert Porter & Sons, Inc. v. National Distillers Prod. Co., 10 Cir., 324 F.2d 202; F & S Const. Co. v. Berube, 10 Cir., 322 F.2d 782; Criqui v. Blaw-Knox Corp., 10 Cir., 318 F.2d 811.

■■ Likewise, the trustee's position that the contract was abrogated with the bankruptcy and only revived upon his assumption thereof, cannot be sustained. " * * * 'An adjudication in bankruptcy does not dissolve or terminate the contractual relations of the bankrupt. * * * Its effect is to transfer to the trustee all the property of the bankrupt except his executory contracts, and to vest in the trustee the option to assume or to renounce these. * * *'" Whiteside v. Rocky Mountain Fuel Co., 10 Cir., 101 F.2d 765, 773 (on rehearing), cert. denied 307 U.S. 640, 59 S.Ct. 1038, 83 L.Ed. 1521. Johnson v. Kurn, 8 Cir., 95 F.2d 629; Watson v. Merrill, 8 Cir., 136 F. 359, 69 L.R.A. 719. When the Trustee assumes an executory contract, he takes it with both the burdens and the benefits. In the case of In Re Italian Cook Oil Corp., 3 Cir., 190 F.2d 994, 996–997, the court said:

" * * * A trustee is, of course, under no obligation to complete executory contracts of a debtor. By Section 70, sub. b. of the Act, the trustee is given the right to adopt or reject an executory contract. He must do one or the other. If the trustee deems the contract to possess no equity or benefit for the estate he rejects it as burdensome. If, on the other hand, he concludes that the executory contract does have an equity for the estate he adopts it. These principles of law have become too well established to permit of doubt. Atchison, Topeka and Santa Fe Railway v. Hurley, 8 Cir., 153 F. 503, affirmed 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729.

5. The tax levy was served on Palmer on April 4; on April 10 he placed the $3,-000 with the escrow holder; and on April 17 Allen was adjudicated a bankrupt.

The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."

Affirmed.