**NORTH AMERICAN VAN LINES, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. No. 1575.**

United States District Court
N. D. Indiana,
Fort Wayne Division.
April 15, 1965.

Martin A. Weissert, Fort Wayne, Ind., for plaintiff, North American Van Lines, Inc.

Martin A. Weissert, Fort Wayne, Ind., and Warren N. Grossman, Knapp, Gill, Hibbert & Stevens, Los Angeles, Cal., for intervening plaintiffs, Bekins Van Lines Co., Lyon Van Lines, Inc., National Van Lines, Inc., Republic Van & Storage Co., Inc.

Alan F. Wohlstetter, Denning & Wohlstetter, Washington, D. C. and J. A. Bruggeman, Barrett, Barrett & McNagny, Fort Wayne, Ind., for intervening defendants, General Movers Corporation and Martin Van Lines, Inc.

Clarence William Vandegrift, Interstate Commerce Commission, Washington, D. C. and John H. D. Wigger, Dept. of Justice, Washington, D. C. and Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for defendants, United States and Interstate Commerce Commission.

Before SWYGERT, Circuit Judge, and GRANT and ESCHBACH, District Judges.

ESCHBACH, District Judge.

This is an action to enjoin, set aside and annul certain orders of the Interstate Commerce Commission in its Docket No. MC–F08723, General Movers Corp.—Control—Martin Van Lines, Inc., dated April 29, 1964, July 29, 1964, and September 17, 1964. By these orders the Commission has granted General Movers Corporation temporary authority to control Martin Van Lines, Inc., through management, until final disposition of a concomitantly filed application of April 17, 1964, wherein General Movers Corporation seeks authority to purchase all of the capital stock of Martin Van Lines, Inc.

By order of this court entered November 12, 1964, General Movers Corporation and Martin Van Lines, Inc., were permitted to intervene as defendants, and pursuant to our order of October 12, 1964, Bekins Van Lines Co., Lyon Van Lines, Inc., National Van Lines, Inc., and Republic Van & Storage Co., Inc., were permitted to intervene as plaintiffs. Briefs have been filed by all parties, and the matter was heard on oral argument on March 18, 1965. Plaintiff's petition, filed August 24, 1964, for a decree enjoining and setting aside the orders of the Interstate Commerce Commission by which General Movers Corporation was granted temporary authority to control Martin Van Lines, Inc., must be denied.

The Commission's authority to grant permission for one motor carrier to gain permanent control of another motor carrier is contained in Section 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5(2)(a)(i) (1959), as follows:

"(a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

"(i) for two or more carriers to consolidate or merge their properties or franchises, or any part thereof, into one corporation for the ownership, management, and operation of the properties theretofore, in separate ownership; or for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; or for any carrier, or two or more carriers jointly, to acquire control of another through ownership of its stock or otherwise; or for a person which is not a carrier to acquire control of two or more carriers through ownership of their stock or otherwise; or for a person which is not a carrier and which has control of one or more carriers to acquire

control of another carrier through ownership of its stock or otherwise."

The Commission's authority to grant permission for one motor carrier to temporarily operate the properties of another pending determination of a Section 5 application, as applicable herein, is contained in Section 210a(b) of the Interstate Commerce Act, 49 U.S.C.A. § 310a (b) (1963), as follows:

"(b) Pending the determination of an application filed with the Commission for approval of a consolidation or merger of the properties of two or more motor carriers, or of a purchase, lease, or contract to operate the properties of one or more motor carriers, the Commission may, in its discretion, and without hearings or other proceedings, grant temporary approval, for a period not exceeding one hundred and eighty days, of the operation of the motor carrier properties sought to be acquired by the person proposing in such pending application to acquire such properties, if it shall appear that failure to grant such temporary approval may result in destruction of or injury to such motor carrier properties sought to be acquired, or to interfere substantially with their future usefulness in the performance of adequate and continuous service to the public."

The narrow question before this court is whether the Commission has the statutory authority under Section 210a(b) to grant temporary operating control to the purchasing motor carrier pending determination of its Section 5 application where the acquisition is by purchase of capital stock of the acquired corporation. While Section 5 permits acquisition of control through ownership of stock, Section 210a(b) mentions a grant of temporary approval for operation pending determination of an application for "purchase, lease, or contract to operate the properties" of the acquired corporation. Plaintiff asserts that the plain language of Section 210a(b) does not authorize the Commission to grant temporary control

where the proposed acquisition is by purchase of stock as distinguished from purchase of the physical assets of the corporation. This contention is based on the alleged absence from Section 210a(b) of any language specifically authorizing a grant of temporary control where the acquisition is "through ownership of its stock," whereas these are the very words of Section 5 on which a permanent acquisition and control may be approved. Plaintiff reasons that Congress did not intend to permit temporary control where the proposed acquisition would involve stock purchase, else it would have included this precise language in Section 210a(b), as it did in Section 5.

The application for temporary approval and attached exhibits, filed by General Movers with the Commission on April 17, 1964, state that the need for temporary control is based on a critical financial condition and vendor's need for management. It was stated that Mr. D. C. Taylor, president and general manager of Martin Van Lines, Inc., died in May 1963 and that Mrs. Edna Viars, a vice president, who assumed management of the corporation, was forced to quit her position in March of 1964 on account of motherhood, leaving the business without any policy level management. The corporation is wholly owned by two widows, neither of whom have any managerial experience in the business. General Movers Corporation proposes to purchase all of the outstanding stock of Martin Van Lines.

To our knowledge, the issue presented herein is one of first impression, even though Section 210a(b) was enacted in 1938 and, as plaintiff's counsel conceded, has been consistently construed by the Commission to include stock acquisitions. The purpose of Section 210a(b), as clearly expressed therein, is to preserve the usefulness of motor carrier properties in the performance of service to the public. Mismanagement and financial difficulties could dissipate the equipment, resources, and business of a motor carrier before the Section 5 petition for its acquisition could be acted upon. Such temporary

protection of the acquired company inspired the recommendation of Section 210a(b) by the National Association of Motor Bus Operators during the 1938 legislative hearings. Hearings before a Subcommittee of the House Committee on Interstate and Foreign Commerce on H. R. 9739, 75th Cong., 3d Sess., pp. 99–100 (1938); and see Hearings before a Subcommittee of the Senate Committee on Interstate Commerce, 75th Cong., 3d Sess., pp. 189–90 (1938). The House committee reported Section 210a(b) with the following comment:

"The amendment which proposes the addition of a new subsection [210 a(b)] to section 9 of the bill would permit the Commission to approve temporarily the operation of the properties of one motor carrier by another in a case where an application for approval of the acquisition is pending, and where the delay in passing on the application might result in injury to the motor carrier operations or the cessation of service." H. Rep. 2714, 75th Cong., 3d Sess., p. 5.

The statute must be construed in such a way as to effectuate its basic purpose, namely, the protection of the operations and service of the acquired corporation. It does not appear that the corporation whose stock is purchased is thereby in less need of interim protection than the carrier whose assets are purchased directly. Nothing has been presented which would indicate such an understanding by Congress. Control of a floundering carrier's assets is transferred as effectively through the sale of stock as through sale of physical properties, and the choice of method is unrelated to the congressional purpose of Section 210a(b).

In effectuating the statutory purpose, the Commission has treated stock and asset acquisition alike for many years. Ruan Transportation Corp.—Control—Union Service Co., 57 M.C.C. 421 (1951); Elliott—Control—Elliott Delivery Service, Inc., 50 M.C.C. 562 (1948); Benton—Control—Contract Trucking Co., 40 M.C.C. 841 (1946). The construction placed on this statute by such an independent administrative agency as the Interstate Commerce Commission is not controlling, but deserves great weight. Levinson v. Spector Motor Service, 330 U.S. 649, 672, 67 S.Ct. 931, 943, 91 L.Ed. 1158 (1947); United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 146, 74 L.Ed. 361 (1930). We believe a different construction would contravene the basic purpose of Section 210 a(b), as declared therein.

Accordingly, the petition of plaintiff, filed August 24, 1964, for a decree enjoining and setting aside the orders of the Interstate Commerce Commission is hereby denied and the petition is dismissed.