**JONES TRUCK LINES, INC., Manley Transfer Company, Inc., and Willis Shaw Frozen Express, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Yellow Freight System, Inc., Intervening Defendant.**

**No. FS-69-C-48.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Aug. 5, 1969.

James B. Blair, Crouch, Blair, Cypert & Waters, Springdale, Ark., William A. Chesnutt and A. Alvis Layne, Washington, D. C., for plaintiffs.

John Wigger, Dept. of Justice, Washington, D. C., Robert E. Johnson, U. S.

Atty., Fort Smith, Ark., Robert W. Ginnane, Gen. Counsel, and Philip W. Getts, Atty., Interstate Commerce Commission, Washington, D. C., for the ICC.

Douglas O. Smith, Jr., Warner, Warner, Ragon & Smith, Fort Smith, Carl L. Steiner, Axelrod, Goodman & Steiner, Chicago, Ill., for Yellow Freight System, Inc.

Before MEHAFFY, Circuit Judge, HARRIS, Chief District Judge, and MILLER, Senior District Judge.

OREN HARRIS, Chief District Judge.

## MEMORANDUM OPINION

The plaintiffs petition this court to review, enjoin, suspend and set aside orders of the Interstate Commerce Commission in its docket No. MC–F–10368, Yellow Freight System, Inc.—Purchase —Red Arrow Transportation Co., Inc. (Charles D. Tudor, Trustee in Bankruptcy), dated January 29 and April 1, 1969, and served February 5 and April 10, 1969. By these orders the Commission has granted Yellow Freight System, Inc. (Yellow) temporary authority to lease the operating rights of Red Arrow Transportation Co., Inc. (Red Arrow) covered by certificates issued in Nos. MC–665 and MC–665 (Sub-Nos. 11, 13, 18, 23, 24, 25, 26, 30, 31, 34, 35, 38, 41, 45, 47, 51, 55, 59, 62, 63 and 68), for a period not exceeding 180 days.[1]

Pursuant to the provisions of Section 210a(b) of the Interstate Commerce Act (49 U.S.C. § 310a(b)) the Commission granted intervening defendant, Yellow Freight System, Inc., temporary authority which has the effect of extending its present operation to Fort Smith, Arkansas, and intervening points in Arkansas, Oklahoma, Missouri and Kansas. By order of this court on May 16, 1969, Yellow Freight System, Inc., was permitted to intervene in this proceeding.

---

1. By its order June 17, 1969, the Interstate Commerce Commission, Review Board No. 5, extended the temporary authority previously granted under Section 210a(b) of the Interstate Commerce Commission Act until the application filed for authority under Section 5 is "finally determined".

On May 23, 1969, hearing and review was held by this three-judge court, appointed pursuant to 28 U.S.C. §§ 2284, 2325, solely on plaintiffs' motion for interlocutory relief filed concomitantly with their complaint. In addition to the very able arguments on the questions involved, excellent briefs have been filed by all parties.

The orders of the Interstate Commerce Commission challenged by the plaintiffs in this proceeding are based on an application filed January 16, 1969, by Yellow Freight System, Inc., for authority under section 5 of the Interstate Commerce Act to purchase the operating rights of Red Arrow Transportation Co., Inc. (Charles D. Tudor, Trustee in Bankruptcy.[2]

The authority of the Interstate Commerce Commission to grant approval for one motor carrier to temporarily operate the properties of another pending determination of Section 5 application, as applicable herein is contained in Section 210a(b) of the Interstate Commerce Act, 49 U.S.C. § 310a(b).[3]

The plaintiffs' motion for interlocutory injunction raises the basic question concerning the discretionary authority, without hearing or other proceedings, of the Interstate Commerce Commission under the relevant section of the Interstate Commerce Act as provided by the Congress of the United States.

The plaintiffs, Jones Truck Lines, Inc., Manley Transfer Company, Inc., and Willis Shaw Frozen Express, Inc., are corporations operating under certificate of public convenience and necessity issued by the Commission as motor common carriers between numerous points in the areas affected by the challenged orders of the Commission. The intervening defendant, Yellow Freight System, Inc., is a corporation with extensive operations under certificates of public convenience and necessity issued by the Commission as a motor common carrier.

On July 30, 1968, Red Arrow, after experiencing several years of financial and other difficulties in its operation, filed a petition in bankruptcy in the United States District Court for the Western District of Missouri. The Trustee in Bankruptcy, Charles D. Tudor, took possession and operated the company until September 27, 1968. By order of the district court on September 27, 1968, the Trustee was directed to sell the operating authority to the highest bidder, setting December 4, 1968, as final date for receipt of bids. Yellow was

---

2. 49 U.S.C. § 5, par. (2). *Unifications, mergers, and acquisitions of control.*
   (a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

   (i) for two or more carriers to consolidate or merge their properties or franchises, or any part thereof, into one corporation for the ownership, management, and operation of the properties theretofore in separate ownership; or for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; or for any carrier, or two or more carriers jointly, to acquire control of another through ownership of its stock or otherwise; or for a person which is not a carrier to acquire control of two or more carriers through ownership of their stock or otherwise; or for a person which is not a carrier and which has control of one or more carriers to acquire control

of another carrier through ownership of its stock or otherwise; or

3. "(b) Pending the determination of an application filed with the Commission for approval of a consolidation or merger of the properties of two or more motor carriers, or of a purchase, lease, or contract to operate the properties of one or more motor carriers, the Commission may, in its discretion, and without hearings or other proceedings, grant temporary approval, for a period not exceeding one hundred and eighty days, of the operation of the motor carrier properties sought to be acquired by the person proposing in such pending application to acquire such properties, if it shall appear that failure to grant such temporary approval may result in destruction of or injury to such motor carrier properties sought to be acquired, or to interfere substantially with their future usefulness in the performance of adequate and continuous service to the public."

the high bidder and the district court entered an order on December 5, 1968, accepting and approving its bid. The order of the court provided further that the Trustee undertake temporarily to lease the involved operating rights to Yellow during the pendency of an application to the Commission for the purchase of such operating authority.

On January 16, 1969, Yellow and Red Arrow jointly filed applications with the Interstate Commerce Commission for temporary authority to operate the properties of Red Arrow in accordance with Section 210a(b) and permanent authority to purchase the operating rights in accordance with Section 5(2) of the Interstate Commerce Act. (49 U.S.C. §§ 310a(b) and 5(2).)

It is quite clear from the record that Yellow seeks authority only to acquire Red Arrow's certificates of public convenience and necessity authorizing transportation of general commodities. After the Commission granted temporary authority to Yellow by its order issued January 29, 1969, the plaintiffs, Jones Truck Lines, Inc., and Manley Transfer Company, Inc., filed a joint petition for reconsideration which the Commission by order issued April 1, 1969, denied, thus affirming its original order.

The narrow question before this court is whether the Commission had in its administrative record sufficient evidence to grant the temporary approval for Yellow to operate the properties of Red Arrow during the pendency of the application of Yellow to purchase the properties.

The plaintiffs contend that there was no rational basis for the action of the commission and therefore the Commission acted arbitrarily and capriciously which was an abuse of its discretion. The defendants contend that the Commission had a rational basis for the exercise of its discretion in that a failure to grant temporary approval may result in destruction of or injury to such motor carrier properties sought to be acquired or to interfere substantially with their future usefulness in the performance of adequate and continuous service to the public.

■ It is well-settled that the district courts may review the Commission's grant or denial of temporary authority under the provisions of Section 210a(b) of the Interstate Commerce Act. 49 U. S.C. §§ 305(g), (h) and 17, and 28 U.S. C. §§ 1336, 1398, 2284 and 2321–2325. See Hussey v. United States, 271 F. Supp. 650 (N.D.Cal., 1967); Three "I" Truck Line, Inc. v. I.C.C., 246 F.Supp. 410 (N.D.Iowa, 1965); North American Van Lines, Inc. v. United States, 240 F. Supp. 464 (1965). Further, the scope of review of the court is limited to a determination of whether the Commission acted in an arbitrary or capricious manner or without authority of law. Schenley Distillers Corp. v. United States, 50 F.Supp. 491 (D.Del., 1943). In addition, the court in conducting its review is limited to the administrative record before the Commission. Hussey v. United States, supra.

■ However, in any temporary authority granted by the Commission "it shall appear that failure to grant such temporary approval may result in destruction of or injury to such motor carrier properties sought to be acquired, or to interfere substantially with their future usefulness in the performance of adequate and continuous service to the public." 49 U.S.C. § 310a(b). This language, therefore, qualifies the Commission's discretionary power to grant temporary authority. Roadway Express, Inc. v. United States, 263 F.Supp. 154 (1966).

It is noted that in the exercise of its authority under the statute the Commission in each of its orders included the relevant language in Section 210a(b). It is also noted that the language in the section refers to "properties". It has been consistently held by the courts and the Commission that a certificate of public convenience and necessity issued by the Interstate Commerce Commission is to be considered as "properties". In

Re Rainbo Express, 7 Cir., 179 F.2d 1, 15 A.L.R.2d 876; Friederich v. Dockery, 8 Cir., 209 F.2d 677; Kirby v. United States, 10 Cir., 329 F.2d 735 (1964); Yellow Truck Lines, Inc.—Purchase—F & H Truck Lines, Inc., 35 M.C.C. 773.

■ In exercising its discretion, Title 49 U.S.C. § 310a(b) allows the Commission to act "without hearing or other proceedings". Hence, hearings and other adversary administrative procedures contemplated by the Administrative Procedure Act are not required and need not be conducted by the Commission. The Commission's action is to be judged factually by the administrative record. A proper exercise of Commission discretion would be established by any evidence in the administrative record which tends to show that the temporary authority may be granted within the limitations provided by the language of the section 49 U.S.C. § 310a(b). The substantial evidence necessary to uphold its grant of permanent authority is not required to support the Commission's grant of temporary authority under Section 210a(b) of the Act, (Title 49 U.S.C. § 310a(b)). Roadway Express, Inc. v. United States, supra, 263 F.Supp. page 175.

■ We now turn to the administrative record to determine if the Commission had a rational basis for its action in granting the temporary approval. From the record before the Commission as contained in the proceedings, appendixes and exhibits in this proceeding, Red Arrow has had operating authority under certificates of public convenience and necessity since 1937. Due to financial difficulties partly because of a strike, the Commission granted temporary authority pursuant to Section 210a(b) of the Act to Bos Lines Inc., in 1966 to operate Red Arrow under the certificate pending an application to purchase. The record discloses that in 1964 Red Arrow received revenues of $872,000. In 1965 the revenues amounted to $330,000. In 1966 the revenues to Red Arrow and Bos amounted to more than $675,000. In 1967 the revenues from the operating certificate amounted to $852,771. For the first five months of 1968 the revenues amounted to $338,733.84.

It is obvious from the record that in view of the difficulties which beset Red Arrow the Commission under its authority authorized Bos to continue the operation in 1966 thus preserving in some degree the services rendered by Red Arrow for some thirty years. When Bos cancelled its contract thus releasing its temporary authority to operate under the certificate of Red Arrow, Red Arrow immediately filed a petition in bankruptcy. Even so, the Trustee in Bankruptcy was authorized to continue the services until the court ordered the sale of the certificate September 27, 1968. When the court approved the sale December 5, 1968, there was no delay in proceeding with an application to the Commission resulting in the orders of the Commission involved herein.

As stated in North American Van Lines, Inc. v. United States, supra, "the statute must be construed in such a way to effectuate its basic purpose, namely, the protection of the operations and service of the acquired corporation".

■ Therefore, it was for the Commission to determine in this instance whether its failure to grant the temporary approval would result in substantial interference with the future usefulness of the properties (certificate) of Red Arrow in the performance of adequate and continuous service to the public. Hence, we are convinced and hold that the Commission had sufficient record in its administrative proceedings to justify its grant of temporary approval pending the determination of the application filed with the Commission for the purchase by Yellow of the operating authority of Red Arrow.

In recognition of its limited power of review this court finds and determines that the Commission did not act arbitrarily or capriciously nor did it abuse its discretion in granting Yellow the temporary authority as requested and

conditioned in its orders of January 29 and April 1, 1969. This opinion shall constitute findings of fact and conclusions of law in accordance with Rule 52(a) Federal Rules of Civil Procedure.

JOHN E. MILLER, Senior District Judge (dissenting).

I respectfully dissent from the reasoning and conclusions of the majority as set forth in the memorandum and order filed today. I would grant the motion for interlocutory relief for the reasons stated below.

I completely agree with the majority that the issue before the court is whether the Commission had in the administrative record sufficient evidence to support its grant of temporary authority to Yellow. Section 210a(b) of the Act, 49 U.S.C. § 310a(b), contains two alternative conditions precedent. The Commission may approve the temporary operation of one motor carrier by another where an application for approval of acquisition under Section 5(2) of the Act, 49 U.S.C. § 5(2), is pending, and (1) the delay in passing on the Section 5(2) application might result in injury to the motor carrier properties, *or* (2) adequate and continuous service to the public is endangered.

The record reveals that in 1964, Red Arrow received revenues of $872,000 and sustained a loss of $118,000. In 1965, revenues amounted to $330,000, resulting in a loss of $105,000. For the first six months of 1966, Red Arrow had revenues of $202,570 and a loss of $227,917. On July 2, 1966, the Commission granted Bos Lines, Inc., (Bos) temporary authority to operate Red Arrow, which authority was renewed from time to time until June 1968, when Bos withdrew its application for permanent authority then pending before the Commission. For the last six months of 1966, under the management of Bos, Red Arrow had revenues of $347,692 and a loss of $42,854. In 1967, under the management of

Bos, revenues amounted to $852,771, resulting in a loss of $67,820. Revenues for the first five months of 1968 were $338,733.84, with a loss of $40,451.92.

At the time of the filing of the petition in bankruptcy, Red Arrow listed liabilities in excess of $500,000 and tangible assets having a worth of less than $5,000. It had no cash on hand and its liabilities included unpaid wages to employees, unpaid withholding and Social Security taxes, plus various general creditors, including interline carriers and several secured creditors. The equipment of the company was subject to liens and was repossessed. All of the operating authority was subject to liens.

As stated in the majority opinion, the only motor carrier property Yellow seeks to acquire from Red Arrow is Red Arrow's certificates of public convenience. These certificates clearly cannot be destroyed by the passage of time and cannot be revoked by the Commission pending the determination of a Section 5(2) application. Bekins Moving & Storage Co.—Purchase—Farrington, 65 M.C.C. 56 (1955). But even if Yellow sought to acquire all of the motor carrier properties belonging to Red Arrow, it is abundantly clear that the conceivable limit of injury to, or destruction of, Red Arrow has already been reached. In fact, the last date to file claims in connection with the bankrupt estate was March 27, 1969.[1] The Commission contends, however, that an injunction would reduce the value to Yellow of the operating authority it seeks to acquire, as customers of Red Arrow will be forced to utilize other carrier service. I can only conclude that the Commission has reference to customers that *Yellow* has acquired from other carriers since commencing operations under its temporary authority on February 10, 1969, as no operations pursuant to Red Arrow's authority were carried on by anyone for a period of at least four months prior to that date. In any event, there is absolutely

1. The temporary operation of Red Arrow by Yellow will provide small comfort to the creditors of Red Arrow, as the agreed rental for the period of the lease is $100.00.

nothing in the record to indicate that Yellow is faring any better than its predecessors in the operation of Red Arrow. Thus, any possible reduction in value of the operating authority resulting from an injunction lies purely in the realm of conjecture. In addition, the creditors of Red Arrow are protected by the contract between the Trustee and Yellow, which allows renegotiation of the purchase price only if the Commission grants Yellow permanent authority upon conditions that in some fashion restrict its use of the operating rights, a matter wholly unrelated to the issues presently before the court. As would be expected, the contract between the Trustee and Yellow states that it shall be deemed null and void if the Commission denies altogether Yellow's application under Section 5(2) for approval of acquisition, but that, too, is a matter which does not concern this court. With all due deference, I am forced to conclude that there is no evidential support for the Commission's finding that failure to grant temporary authority might result in destruction of, or injury to, the motor carrier properties sought to be acquired.

There is also no support for the Commission's finding that a failure to grant temporary authority might substantially interfere with the future usefulness of the motor carrier properties in the performance of adequate and continuous service to the public. We are simply not dealing with a situation in which an existing carrier is in danger of going under, and the grant of temporary authority to another carrier will insure adequate and continuous service to the public. As heretofore stated, no operations under the Red Arrow authority were carried on by anyone for at least four months prior to the date temporary authority was granted to Yellow. In fact, defendants' supplemental exhibit B–7 shows July 18, 1968, as the last date shipments were transported, which indicates a cessation of service of over six months. On August 1, 1968, the Receiver was authorized by court order to operate Red Arrow for a period of 60 days. The record does not, however, reveal the extent of the operations, if any, conducted by the Receiver. It is also significant that there is no allegation and absolutely no evidence in the record before the Commission that the shipping public is in need of the operations instituted by Yellow. Indeed, the only reasonable inference to be drawn from the erratic and, ultimately, nonexistent service provided under the Red Arrow authority is that the shipping public has gone elsewhere for service. Certainly, facts bearing on the adequacy and continuity of service rendered in the past and the absence of information as to present need are relevant to the question whether the performance of adequate and continuous service to the public is in danger of substantial interference.

I am of the view that, if Congress contemplated that a carrier seeking temporary authority under Section 210a(a) of the Act would come forward and make a showing that existing carrier facilities in the area are inadequate, Schenley Distillers Corp. v. United States (D.Del.1943) 50 F.Supp. 491, 494; Merchants Delivery Co. v. United States (W.D.Mo.1967) 265 F.Supp. 669, 672, it must also have contemplated that a carrier seeking temporary authority under Section 210a(b) would come forward and make a showing that injury to the subject motor carrier properties is imminent or that adequate and continuous service to the public is endangered. The defendants have utterly failed in this respect. The House Subcommittee which held hearings on the then proposed Section 210a(b) reported it with the following comment:

"The amendment which proposes the addition of a new subsection [210 a(b)] to Section 9 of the bill would permit the Commission to approve temporarily the operation of the properties of one motor carrier by another in a case where an application for approval of the acquisition is pending, *and the delay in passing on the application might result in injury to the*

*motor carrier operations or the cessation of service."* (Emphasis added.) H.Rep. 2714, 75th Cong., 3d Sess., p. 5 (1938).

It is the duty of the court to discover and comply with the intent of Congress in passing Section 210a(b). I do not believe, however, that Congress intended the courts to rely on nothing more than the predilections of the Commission. I am of the view that the Commission, in a proceeding under Section 210a(b), is not bound to comply with the provisions of 5 U.S.C. § 557, but if the Commission chooses to rely on a bare recitation of the statute, it is incumbent upon the courts to closely scrutinize the administrative record to discover a rational basis for the Commission's conclusion. Moreover, I perceive a great deal of difference between the instant case, in which operations lapsed and the carrier cannot be revitalized, and one in which the grant of temporary authority might actually breathe new life into a floundering concern. North American Van Lines, Inc. v. United States (N.D.Ind. 1965) 240 F.Supp. 464. Here, the orders of the Commission can only serve the purpose of diverting customers and revenue from existing carriers conducting operations in the area. Plaintiffs are certainly not entitled to blanket insulation from competition, but they are entitled to protection from orders of the Commission having no rational basis in fact.

The majority concedes that the statutory language " * * * if it shall appear that failure to grant such temporary approval may result in destruction of or injury to such motor carrier properties sought to be acquired, or to interfere substantially with their future usefulness in the performance of adequate and continuous service to the public," limits and qualifies the Commission's discretionary power to grant temporary authority. Yet no fact or reason is cited, other than the discretion of the Commission, for denying the motion for an injunction. Certainly the fact that Bos operated Red Arrow for a period of two years at a tremendous loss does not supply a basis in fact for the present action of the Commission. Red Arrow has literally been destroyed, and the cessation of service was an accomplished fact. Thus, neither prerequisite contained in Section 210a(b) has been met. The holding of the majority has the practical effect of denying meaningful judicial review in these cases.

Plaintiffs' motion should be granted, and the orders complained of should be restrained and enjoined.

