HOLLOWAY, Circuit Judge,
dissenting:
I respectfully dissent. I would affirm the judgment of the bankruptcy court. The Debtors’ interests in the stock appreciation rights (SARs) were too uncertain to be included within their bankruptcy estates.

Background.

Almost all the relevant facts are noted in the majority opinion, and I will only mention facts that seem most critical to me. As noted in the majority opinion, the SARs at issue here were given for a fifteen year term (Maj. op. at 1203), while Spirit told the eligible employees, including Debtors, that it was “using a five-year period” in planning, which implied that Spirit believed it likely that a “payment event” would probably occur within five years, if it were to occur.
The bankruptcy judge found that Spirit had absolute discretion whether to “sell, merge, or publicly offer stock,” which were the three ways that a “payment event” could occur. Parks v. Dittmar (In re Dittmar), 410 B.R. 71, 77-78 (10th Cir. BAP 2009) (quoting Bankruptcy Court’s interim order). And there was a further contingency that applied to any of these three possible routes to issuance of the SARs: the “payment event” would first have to result in at least a fifteen' per cent “annual profit” to “the initial equity investors.”[1]

The framework for the analysis.

The majority opinion outlines three-steps for the analysis: first, whether the Debtors have a property interest in the SARs under Kansas law; second, whether the interest existed at the time the Debtors filed their petitions; and third, whether the property interests are property of the bankruptcy estate under 11 U.S.C. § 541. Maj. op. at 1204. This seems to be correct, but applying the approach in this context presents a real challenge.

Were the interests recognized as property under state law?

On the first question — whether the benefits are an “interest in property” under Kansas law — we have previously held that as a general rule contingent interests are property in Kansas. Kirby v. United States (In re Allen Bros. Truck Lines, Inc.), 329 F.2d 735, 737 (10th Cir.1964). The property in that case was a contractual right. The bankrupt, a trucking company, had agreed to sell its certificate of convenience and necessity to another, with part of the consideration having been paid at the time of the agreement and the remainder to be paid upon approval of the transfer by the state agency with authority over the matter. Bankruptcy was declared before the sale had been completed. And before the bankruptcy petition was filed, the IRS had notified the buyer of the certificate that it claimed a tax lien on the payment contingently owed to the trucking company. The bankruptcy trustee challenged the tax lien, arguing that there was no “property” to which the lien could attach.
On appeal, we held in favor of the IRS. The parties did not dispute that the certificate itself was property under Kansas law. The bankruptcy trustee, however, argued that because the contested balance of the payment for the certificate was not due until approval by the state agency had been obtained, there was no present prop *1211 erty right in that balance. That contention was rejected. The court found no authority on the nature of the rights between the parties to this transaction, but held that “whatever the exact nature of those rights, they at least constitute a contingent liability, and under the law of Kansas, unmatured and contingent liabilities are subject to garnishment.” 329 F.2d at 737.
Accordingly, I agree with the majority that the SARs at issue here are property rights under state law.

Did the Debtors have rights when they filed their petitions?

I agree with the majority that the evidence showed that the property interests came into existence with the execution of the collective bargaining agreements and thus were in existence when the Debtors filed their petitions.

Were the Debtors’ interests property of their bankruptcy estates?

The third and pivotal issue is whether the Debtors’ property interests in the SARs became property of the bankruptcy estates. Analysis here must begin with the extremely broad language used by the Supreme Court and Congress to describe property of the estate. In a case under the Bankruptcy Act, the Court said that the bankruptcy estate includes “everything of value the bankrupt may possess ... when he files his petition” and that an interest is not excluded “because it is novel or contingent or because enjoyment must be postponed.” Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Our court and others have noted that Congress, in passing the Bankruptcy Code, specifically endorsed this language, so it remains valid. See Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516, 1518 (10th Cir.1991).
As the majority opinion discusses, courts nevertheless have found that some property interests are too remote and speculative to be included in the bankruptcy estate. Significantly, the SARs in this case were subject to multiple contingencies and potentially to a very long period of uncertainty.
As the majority opinion notes, no cases have been cited or found that deal with facts closely analogous to those we deal with here. We are further hindered by the lack of analytical guidance offered by the cases. There does not appear to be even a framework to guide us as we contemplate the inherently inexact process of trying to determine what level of uncertainty must be present for a property interest to be outside the scope of section 541(a)(1), a scope that all agree is quite broad indeed.
As the dissenting judge on the BAP noted, while the
general principles governing property of the estate under § 541 generate little controversy, their application varies widely, especially regarding contingent property interests.....[T]he varying analyses make it difficult to cull any settled, functional rule for determining when a contingent interest is property of the estate. At best, the case law can be said to exist on a continuum. At one end are contingent property interests that were clearly created and rooted in a debtor’s pre-bankruptcy past, such as a prepetition contract that will result in the debtor receiving payments postpetition. At the other end of the spectrum are interests so amorphous, so speculative, or subject to so many contingencies, that courts deem them to be “mere expectancies,” rather than existing property interests. Most interests fall in between these two extremes, and often have a mix of characteristics that make it very difficult to ascertain whether the interest has crossed the line from “mere *1212 expectancy” to contingent property interest within the scope of § 541.
Parks v. Dittmar (In re Dittmar), 410 B.R. 71, 84-85 (10th Cir. BAP 2009) (Brown, J. dissenting) (footnotes omitted).
One clear principle that should under-gird our analysis is that the facts must be considered as of the date that the Debtors filed their petitions. The bankruptcy estate comprises “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). The trustee “succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition.” Weinman v. Graves (In re Graves), 609 F.3d 1153, 1156 (10th Cir.2010) (quoting In re Sanders, 969 F.2d 591, 593 (7th Cir.1992)). A second overriding policy is “that bankruptcy cases be handled in a speedy and expeditious manner.” Turney v. FDIC, 18 F.3d 865, 869 (10th Cir.1994) (quoting 2 Collier on Bankruptcy, ¶ 102.02 (15th ed.1993)).
The majority finds that cases involving annual employee bonuses have the most similar context and therefore provide some guidance for our task. Maj. op. at 1208-10.[2] As discussed in the majority opinion, a single factor appears to distinguish at least some of the cases holding that an employee bonus is property of the employee’s bankruptcy estate from those holding the bonus is not property of the estate. That factor is whether the employer had discretion to withhold a bonus, even when all conditions attached to the bonus by that particular employer were satisfied.
The majority apparently accepts the reasoning of the courts which hold that employer discretion whether to grant an annual bonus or not may be decisive. The majority apparently concludes, however, that although discretion whether to award a benefit results in the benefit being outside the bankruptcy estate, discretion to control the conditions that activate the awarding of the benefit does not. I find the distinction unconvincing.
If employer discretion is to be the controlling factor, then I see no reason why the discretion vested in the employer here — which was absolute discretion to create or eschew creating the conditions that would lead to Debtors eventually receiving tangible benefits — should be an exception to such a rule. Moreover, this case can and should be decided without adopting the rule that employer discretion is controlling, as was done in the employee bonus cases cited by the BAP such as Vogel v. Palmer (In re Palmer), 57 B.R. 332 (Bankr.W.D.Va.1986).
In this case, the employer not only had discretion whether to initiate any “payment event” and thus activate its obligation to create the SARs, but its obligation was further conditioned on an arbitrary factor that the event first had to create at least fifteen percent annual profit for the initial investors. Further, and quite significant in my view, the employer here, unlike in the cases discussed by the majority and cited by the parties, retained the power to postpone its decision for up to fifteen years. Given the majority’s apparent agreement with cases that hold that employer discretion either to pay or to withhold an annual bonus results in the benefit being outside the bankruptcy estate, one would expect that the benefit in this case, with its multiple contingencies and prolonged period of latency, would be an a fortiori case in which the SARs are outside the bankruptcy estates.
*1213 It is not necessary for this panel to endorse the holdings of those courts that have held that employer discretion to pay or withhold an annual bonus to an employee results in the bonus being outside the bankruptcy estate. Here we have not just that one factor, but the additional contingency that the event over which the employer had control must have occurred with certain results (realization by the “investor group” of at least a fifteen per cent annual profit). Further, unlike the facts in the employee bonus cases discussed in the majority opinion, we also deal with a context in which the potential benefit was not certain to become payable, if at all, within a few months of the bankruptcy filing but potentially anytime within the following fifteen years.
Viewing these Debtors’ property rights in the SARs at the time of the commencement of their cases, and mindful of the policy mandating expeditious handling of the estates, I conclude that the SARs were properly held by both courts below to be outside the bankruptcy estates and so not subject to turnover to the Trustees.

Conclusion.

It is challenging to find the demarcation between contingent property interests that are properly included in the estate of a bankrupt and those that are so extremely novel or contingent that they are not so included. I conclude and would hold that the SARs at issue here were not part of the Debtors’ estates because at the critical time that the petitions were filed by the Debtors, the interests were subject to multiple contingencies, including the likelihood that they would remain only contingent interests for some years post-petition. I therefore respectfully dissent.

. It is unclear whether these terms were defined, but Debtors have not contended that these terms are ambiguous.

. More specifically, all the cases cited and discussed in this part of the majority opinion involve bonuses that had not been paid at the time bankruptcy proceedings were commenced but which had, at least arguably and at least partially, been earned at that time.